MYRTLE NICHOLSON, Plaintiff-Appellant, v. THE CITY OF DANVILLE *et al.,* Defendants-Appellees.

Fourth District   No. 4—86—0074

Opinion filed September 15, 1986.

Lowenstein, Hubbard & Smith, of Danville (Fred L. Hubbard, of counsel), for appellant.

James C. Kearns and Michael E. Raub, both of Heyl, Royster, Voelker & Allen, of Urbana, for appellee City of Danville.

Carlton M. Kagawa, of Saikley, Garrison & Kagawa, Ltd., of Danville, for other appellees.

JUSTICE SPITZ delivered the opinion of the court:

Trip and fall on State-maintained sidewalk located within municipal boundaries.

Summary judgment for both defendant municipality and defendant adjacent property owner on ground that neither was responsible for sidewalk's maintenance.

We affirm.

This litigation arises from a fall sustained by the plaintiff, Dorothy Nicholson (Nicholson), on October 2, 1981, on a sidewalk on the east side of the Dixie Highway, also known as State Route 1, and adjoining the western boundary of the Dixie Drive In Theatre property. The Dixie Highway runs north and south, and the sidewalk on which Nicholson fell is within the Danville city limits. The Dixie Drive In is owned by defendants Jack A. Butler and Jack A. Butler Enterprises, Inc. (Butler), and by Jack A. Butler's wife, Mildred Butler.

Nicholson filed suit against both the city of Danville and Butler, alleging that they had failed to properly maintain the sidewalk on which she fell and failed to warn the public of the dangers posed by the sidewalk's defective condition. In due course, the circuit court entered summary judgment for both defendants on the basis that at the time of Nicholson's fall, neither was responsible for maintenance of the sidewalk or for its defective condition and that, instead, the sidewalk was at that time owned and maintained by the State. Nicholson appeals these decisions.

Since control over and responsibility for maintenance of the sidewalk on which Nicholson fell are the only issues involved in this appeal, we will mention only the facts relevant to those questions.

Clark E. Baker, Danville's city engineer, stated in an affidavit that the sidewalk on which Nicholson fell is within a State right-of-way. Danville has never contracted with the Illinois Department of Transportation (Department) to maintain that sidewalk.

In a subsequent deposition, Baker stated that Danville probably would not enforce its ordinances relating to obstructions on the stretch of sidewalk in question, but would instead call on the State to remedy any problem regarding the sidewalk. Danville does not issue driveway permits for the stretch of road adjacent to that sidewalk, even though the adjacent land was annexed to the city in 1960. Although the city does act on permits issued by the State for construction of new driveways on that stretch of the Dixie Highway, it does so

only in an advisory capacity, and the city's acting on those permits is, according to Baker, a "courtesy signature" procedure. In practice, all maintenance on the section of Dixie Highway adjacent to the sidewalk on which Nicholson fell is performed by the State, but there are no agreements providing for exclusive State maintenance.

In Baker's view, the State requirements for driveway permits generally parallel the city requirements, and where there is a difference, a discussion is held with the State highway engineer in Paris, Illinois. Baker acknowledged that a Department policy statement on access to State highways provides that the requirements of planning and zoning boards, as well as local ordinances, are not altered by the issuance of a Department highway permit, and that issuance of a Department highway permit does not relieve the applicant of the responsibility of obtaining local approvals and permits. However, Danville has apparently never required applicants for driveway permits on State highways to obtain additional local permits. Baker did not recall that any matters respecting maintenance of the section of sidewalk on which Nicholson fell were ever referred to the State, but he did recall that at about the time of Nicholson's fall, the State asked why they had not been notified of problems with respect to the sidewalk.

On cross-examination by Danville's counsel, Baker stated that he was not sure whether Danville has veto power over the construction of driveways leading to or from State highways located within the city limits. He would challenge the issuance of a State driveway permit on a section of roadway if he felt that issuance of the permit would be improper, but was not sure if the State would deny issuance of the permit after such a protest. Baker reiterated that during his eight years as Danville's city engineer, the stretch of sidewalk where Nicholson fell had never been a part of the city's maintenance responsibility, but he stated that he had done no checking to see if Danville had ever been responsible for its maintenance. To Baker's knowledge the sidewalk has never been within any city-State maintenance agreement, but he was not sure that such an agreement did not exist.

Also at a deposition, Bernie S. Rinehart, the Department's permit engineer, stated that many permits have been issued by the State for construction of driveways on the stretch of the Dixie Highway adjacent to which Nicholson fell, and that virtually all of these permits had the prior approval of Danville's mayor and city engineer. Customarily, a permit for construction of a driveway on a State highway within 1½ miles of a city's limits requires the signature of the city's mayor and engineer before it is signed by a Department official. However, this is just a courtesy between the Department and local govern-

ments; no Department policy requires that such projects be approved by a municipality's mayor and engineer before the construction proceeds. If city officials refuse to sign such a permit, "they usually inform us why they won't sign them, and then that way we can try to work something out and see what's wrong." The Department does not respect or apply any municipal standards for driveway permits which are more stringent than those prescribed by the State, because it has to issue driveway permits unless there are safety reasons for not doing so.

The sidewalk on which Nicholson fell was built by the State in 1938 and 1939. Although an agreement between Danville and the State was entered into on May 10, 1977, providing that Danville was to be responsible for improvements past the outer edges of the Dixie Highway thru-traffic lanes, this agreement did not, in Rinehart's view, apply in any way to the area in front of the Dixie Drive In.

On cross-examination by Danville's counsel, Rinehart stated that to the best of his knowledge, the city engineer's and mayor's signatures on driveway permits for portions of State highways within municipal boundaries do not place any responsibility on the municipality regarding maintenance or control of the stretch of road on which the driveway is located. Also, Rinehart reiterated that there was no agreement between Danville and the State regarding maintenance of the sidewalk where Nicholson's fall occurred. Moreover, the city had not requested permission to modify or to perform maintenance work on that section of sidewalk.

William Brannon, the Department's maintenance field engineer for Champaign and Vermilion counties, stated that the Department has a duty to maintain the sidewalk adjacent to the Dixie Highway, which is within a State right-of-way and always has been. Thus, the State is responsible for mowing next to the sidewalk and mows the area with tractors. The area is usually mowed two to three times per year, and the mowers do not have mechanisms to pick up grass cuttings. To Brannon's knowledge, there is no systematic inspection program with regard to the sidewalk on which Nicholson fell.

Danville's responsibility for maintenance of the Dixie Highway ends at Newell Avenue, which is about 1½ miles south of Liberty Lane. The area where Nicholson's fall occurred is north of Liberty Lane. Brannon implied, however, that the State probably would tolerate Danville performing maintenance along the portion of Dixie Highway north of Newell Avenue.

In an affidavit, Lowell H. Loving, a surveyor, stated that the sidewalk in front of the Dixie Drive In is wholly within the Dixie Highway

right-of-way.

In a deposition, defendant Jack A. Butler stated that he and his wife had never mowed the grass west of a line 3 feet east of the sidewalk on which Nicholson fell. He occasionally saw the State mowing in the area of the sidewalk, and the State never would sweep it. However, his wife, Millie Butler, did clean the walk for about 10 years before the first part of 1979, when Butler permanently closed the Dixie Drive In. Whenever any maintenance work needed to be done west of the line 3 feet east of the sidewalk, Butler always called upon the State to do it. Butler never complained to Danville about the condition of the sidewalk.

Butler's wife, Millie Butler, stated in a deposition that when she and her husband purchased the Dixie Drive In property, they were told that their property extended only out to the front edge of a marquee sign, which was east of the sidewalk on which Nicholson fell. The State had always mowed the grass beyond the marquee sign. She cleaned the sidewalk with a broom many times after the State mowed it, but she had not done this since 1979.

In a deposition taken on June 26, 1985, Ernie A. Cox, Danville's commissioner of streets and public works, stated that he knew for sure that a State permit would be required for sidewalk work in the area where Nicholson fell, but was not sure if a city permit would also be required. Danville conducted no inspections of the roadway between Newell Avenue and the city limits; and the city would only have notified the State of adverse conditions on this stretch of road if it received a complaint. At the time of Cox' deposition, work north of Newell Avenue pursuant to a joint city-State maintenance agreement had been let to bid, but the contract had not yet been awarded. At the completion of this construction project, Danville would assume responsibility for maintenance of sidewalks, street lights, "signalization," and storm sewers north of Newell Avenue. There had not, however, been an actual change in maintenance relationships for the portion of Dixie Highway north of Newell Avenue since Nicholson's fall. Also, Cox specifically stated that on October 2, 1981, the State maintained the sidewalk in question, and that prior to the deposition, Danville had never maintained the street or sidewalk near the Dixie Drive In.

On re-cross-examination, Cox stated that the annexation of the area where the Dixie Drive In is located would not, to his knowledge, have affected the State's responsibility to maintain the adjacent stretch of Dixie Highway and the adjoining sidewalk.

Finally, Nicholson filed certified copies of minutes of the Vermilion

County board, which indicated that the county had expended funds for the acquisition of right-of-way and maintenance of the portion of Dixie Highway in the area of Nicholson's fall at least as early as 1937 and possibly as early as 1833.

■ Summary judgment is property granted when the pleadings, depositions, and affidavits on file establish that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c); *Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535.) In order for a summary judgment to be sustained on review, the right of the movant to summary judgment must be free from doubt and evidence in support of the motion must be strictly construed against the movant. *Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867; *Hendricks v. Deterts* (1973), 13 Ill. App. 3d 976, 301 N.E.2d 625.

■ In support of her argument that Danville had control over, and a duty to maintain, the sidewalk in front of the Dixie Drive In on which she fell, Nicholson asserts that in annexing the area within which the walk is located, Danville acquired jurisdiction over all of the streets and sidewalks in the annexed area. Cited in support of this argument is *People ex rel. Dwight v. Chicago Rys. Co.* (1915), 270 Ill. 278, 110 N.E. 394, which was a *mandamus* action to compel two streetcar companies to carry passengers between any points on their lines in Chicago and Oak Park for a single fare of five cents. In the course of its opinion, the court stated that upon the annexation to Chicago of an area which had previously been located within the town of Cicero, jurisdiction over the streets and alleys in that area immediately vested in the city of Chicago. Thus, the conditions of usage of streets by streetcar companies which the town of Cicero had previously enacted could, with the consent of the streetcar companies, be changed in any way that the city of Chicago desired, and Oak Park could not, therefore, compel a streetcar company operating in the city of Chicago to carry passengers under specific preexisting conditions. *Dwight* is factually inapposite to the case at bar, where the central issue is what governmental entity actually exercised control over and maintained a sidewalk.

■ Nicholson also makes a vague assertion that as of the time of her fall, Danville should be deemed to have had maintenance responsibility for the sidewalk in front of the Dixie Drive In by virtue of section 1—102 of the Illinois Highway Code (Ill. Rev. Stat. 1985, ch. 121, par. 1—102), which provides in part:

> "It is further declared that highway transportation system development requires the cooperation of State, county, township,

and municipal highway agencies and coordination of their activities on a continuous and partnership basis and the legislature intends such cooperative relationships to accomplish this purpose."

However, the above provision does not automatically confer maintenance responsibility on municipalities for thoroughfares lying within their boundaries as to which the State has assumed maintenance responsibility. *Tunk v. Village of Willow Springs* (1983), 120 Ill. App. 3d 800, 458 N.E.2d 1132.

■ Nicholson further contends that the State's failure to file in the Vermilion County clerk's office a statement that the stretch of Dixie Highway adjacent to the site of her fall has been incorporated into the State highway system, pursuant to section 4—204 of the Illinois Highway Code (Ill. Rev. Stat. 1983, ch. 121, par. 4—204), precludes Danville from asserting that at the time of her fall the State had exclusive maintenance responsibility for that sidewalk. Section 4—204 provides in pertinent part:

"Whenever any highway becomes a part of the State highway system, the Department shall file in its office a description of such State highway. All changes in and additions to the State highway system shall also be noted by so filing a description of such changes and/or additions. A copy of such description shall be filed in the office of the county clerk of each county in which the highway is located."

It is Nicholson's contention that the filing in the county clerk's office of a notice of changes in the State highway system pursuant to section 4—204 should be deemed necessary in order to establish that the State, as opposed to a municipality within the boundaries of which a stretch of road lies, has exclusive maintenance responsibility for the section of roadway in question. She asserts that noncompliance with this requirement leaves the public in the position of not knowing to which governmental entity complaints regarding potholes, high weeds, *et cetera,* should be made, and against which claims for injuries occurring on any given stretch of road should be brought.

We agree that considerations of public policy demand that the filing requirement of section 4—204 should generally be complied with. However, under the facts of this case, a holding that Danville was responsible for maintenance of the sidewalk on which Nicholson fell because of the State's failure to file the required notice would be neither a fair nor an equitable decision, for it was the State, and not Danville, which was obligated to file an appropriate notice. Our holding is in harmony with the *Tunk* decision, where the court held that noncom-

pliance with section 4—204 did not automatically confer upon a municipality a duty to maintain a section of roadway with respect to which the State should have filed, but did not file, a section 4—204 notice.

■■ ■ Finally, Nicholson relies on various facts appearing of record which she contends establish that there is a triable issue of fact as to whether, at the time of her fall, Danville had a duty to maintain the section of sidewalk in front of the Dixie Drive In. It is not necessary to recite all of those facts here. Suffice it to say that none of them support the conclusion that Danville *actually* exercised maintenance jurisdiction and had control over the section of sidewalk in issue at or before the time of Nicholson's fall. Instead, the record contains undisputed evidence that the State built the sidewalk on which Nicholson fell, that the sidewalk was within a State right-of-way, that the State performed maintenance work on the sidewalk following Nicholson's fall, and that Danville had not performed any such work on the sidewalk prior to Nicholson's fall. The mere fact that prior to Nicholson's fall Danville *could* have performed maintenance work on this section of sidewalk without objection on the part of the State does not mean that the city *actually* exercised maintenance jurisdiction or control during the relevant time period.

A necessary predicate of tort liability is a duty owed to the plaintiff. (*Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 306 N.E.2d 39.) A municipality owes the public no duty to maintain public thoroughfares over which it has no jurisdiction or control (*Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 404 N.E.2d 213; *Tunk v. Village of Willow Springs* (1983), 120 Ill. App. 3d 800, 458 N.E.2d 1132), and a municipality's duty to maintain a public improvement does not commence until an improvement is actually undertaken. (*Horrell v. City of Chicago* (1986), 145 Ill. App. 3d 478.) Because there is uncontradicted evidence that Danville had no actual jurisdiction over or control of, or had in any manner improved the sidewalk in front of the Dixie Drive In prior to Nicholson's fall, it owed Nicholson no duty to maintain that portion of the sidewalk in a safe condition. Therefore, the circuit court properly entered summary judgment in Danville's favor.

■■ Nicholson contends that Butler voluntarily assumed a duty to keep the sidewalk on which she fell in a clean and safe condition in that he "kept grass and dirt from growing over the edges of the sidewalk," and owned and operated the adjacent Dixie Drive In through June 20, 1984, the date of his answers to Nicholson's interrogatories. Nicholson asserts that Butler's duty to keep the sidewalk clean therefore existed up to and including the time of her fall, and that sum-

mary judgment was thus improperly entered in his favor.

The above contentions are not supported by the record. First of all, Millie Butler responded in the negative to a question as to whether, while the Dixie Drive In was open, "grass and dirt did not grow over the edges of the sidewalk," and immediately thereafter, responded in the affirmative to the question, "That's all happened since the drive in closed?" Secondly, in his answers to Nicholson's interrogatories filed June 20, 1984, Jack A. Butler did state that he and his wife, Mildred Butler, and Jack A. Butler Enterprises, Inc., were the "owners and operators" of the Dixie Theatre from January 1, 1981, to date. This answer does not, however, amount to a specific statement that the theatre was operating as a going concern at the time of Nicholson's fall; rather, the only explicit statements concerning whether the theatre was in operation as a going concern at that time are uncontroverted deposition statements of both Jack and Millie Butler that they closed the Dixie Drive In. in 1979. These latter statements clarify and limit the meaning of the term "owners and operators" as used in Butler's answers to interrogatories.

On the basis of the deposition testimony of he and his wife that they closed the Dixie Drive In in 1979, Butler has filed a motion to strike the portion of Nicholson's brief stating that the Butlers owned and operated the Dixie Drive In through June 20, 1984. However, this statement does appear in Butler's answers to Nicholson's interrogatories, and we therefore deny Butler's motion to strike.

As Nicholson points out, failure to exercise due care in the performance of a voluntarily assumed duty generally results in the imposition of tort liability on the party which has assumed such a duty. (*Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472.) However, such a duty—unlike many other duties—is subject to termination at the will of the party which has assumed it. The termination of such a duty becomes effective when an individual receives reasonable notice of its termination. 65 C.J.S. *Negligence* sec. 4(4) (1966).

■ In the present case, Butler had discontinued his voluntarily assumed duty prior to the time of Nicholson's accident, since he and his wife had ceased operating the Dixie Drive In as a going concern, and had ceased cleaning the sidewalk adjacent thereto, in 1979, approximately two years before the occurrence in question. Nicholson lived in the area where her fall occurred and had resided there "going on [her] second year" at the time of her fall. She normally took a morning walk, usually along the same route which she was walking when she fell. It follows that as a result of Nicholson's familiarity

with the route which she walked on a daily basis and her observations of the Dixie Drive In and the condition of the sidewalk during her walks, she had notice, at the time of her fall, that the Dixie Drive In was no longer operating as a going concern and that Butler had discontinued his voluntarily assumed duty of keeping the sidewalk in front of that property free of debris. Since on the basis of the record before us it is indisputable that at the time of Nicholson's fall Butler owed her no duty, the circuit court properly entered summary judgment in Butler's favor.

Because we conclude that summary judgment was properly entered in favor of both Danville and Butler, we affirm the circuit court's judgments.

Affirmed.

GREEN and MORTHLAND, JJ., concur.