# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Nida v. Spurgeon*, 2013 IL App (4th) 130136

---

| | |
|---|---|
| Appellate Court Caption | MARCIA NIDA, Plaintiff-Appellant, v. MARLENE SPURGEON, Individually and as Administratrix of the Estate of LORENE D. HART, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-13-0136 |
| Filed | October 30, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for defendant landlord in an action for the injuries plaintiff suffered when she was walking on the driveway of the property she had rented from defendant and a piece of the driveway broke and she fell, since plaintiff had been aware of the deteriorated condition of the driveway from the time she rented the property, defendant was entitled to presume plaintiff would be cautious when she encountered the open and obvious condition, plaintiff did not suggest how defendant could have guarded against the injury, nor did she claim the driveway violated any housing regulation, and an injury-proof driveway could not have been provided, regardless of the material or grade. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 11-L-194; the Hon. Leo Zappa, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Jason B. McGary and Hania Sohail (argued), both of Strong Law Offices, of Peoria, for appellant. |
| | |
| | Craig L. Unrath and Natalie D. Thompson (argued), both of Heyl, Royster, Voelker & Allen, of Peoria, for appellee. |
| | |
| Panel | JUSTICE KNECHT delivered the judgment of the court, with opinion. Presiding Justice Steigmann and Justice Turner concurred in the judgment and opinion. |

**OPINION**

¶ 1      On August 10, 2011, plaintiff, Marcia Nida, filed a two-count complaint against defendant, Marlene Spurgeon, individually and as administratrix of the estate of Lorene D. Hart, for injuries suffered at a rental property owned by defendant. In November 2012, defendant filed a motion for summary judgment. In February 2013, the trial court granted the motion for summary judgment, concluding defendant did not owe a duty of care to plaintiff.

¶ 2      Plaintiff appeals, arguing the trial court erred in granting defendant's summary judgment motion. Plaintiff contends defendant owes her a duty of care and factual issues exist as to whether a dangerous condition was open and obvious and *de minimis*. We affirm.

¶ 3                      I. BACKGROUND

¶ 4                      A. Plaintiff's Complaint

¶ 5      On August 10, 2011, plaintiff filed a two-count complaint against defendant, individually and as administratrix of the estate of Hart, for injuries suffered at a rental property owned by defendant and located on Gaule Road in the Village of Rochester. Plaintiff alleged, on August 23, 2009, she was a tenant at the property and was walking on the property's driveway when a piece of the driveway broke and she fell, injuring herself. Plaintiff alleged defendant was negligent for failing to warn plaintiff about the condition of the driveway, failing to repair the driveway, and permitting the driveway to exist in a "state of disrepair."

¶ 6                      B. Discovery

¶ 7                      1. *Plaintiff's Deposition*

¶ 8      At her deposition, plaintiff testified she moved into the house on May 15, 2008. When she moved in, she performed a walk-through with defendant's children, Robert Spurgeon and Lisa Kaiser. During the walk-through, plaintiff asked about the driveway and Robert "said

he was going to patch [it] or replace it." Plaintiff dealt with Robert and Lisa about the day-to-day affairs. Robert "took care of maintenance" at the property and delivered water to the cistern. She testified she requested defendant repair the driveway "at least five times" and her requests "were always oral." She testified Robert repaired the air conditioning once but did not mention other maintenance requests. On one occasion when Robert delivered water, he "bottomed out" and said "he needed to get that driveway fixed or someone's going to really tear up their car." Plaintiff testified she or another resident mowed the grass and she never attempted to "clean up or sweep out any of the broken pieces" in the driveway. A garage and a cattle gate were on the property and defendant and her family "were in and out on the driveway a lot." She observed them use the driveway "probably 20 [or] 25 times" during the time she lived there. They would use the driveway "when they had to come and check on the cows, or when they would switch the cows, or if they needed the garage." She admitted she stopped paying rent in April 2009 and was given an eviction notice in August 2009.

¶ 9    On August 23, 2009, she walked down the driveway to the mailbox. The sun was out but she did not know what time of day it was. The driveway was made up of "asphalt, old asphalt." She walked in a manner to avoid broken pieces of asphalt, she described this as a "zigzag" route. As she was walking back up the driveway she "stepped on the asphalt, the piece broke, and [her] ankle snapped." She fell in the area between a telephone pole beside the driveway and the mailbox at the bottom of the driveway. The broken piece of asphalt was about the size of a football.

¶ 10    *2. Defendant's Deposition*

¶ 11    Defendant testified her mother, Lorene D. Hart, had lived in the house for 70 years before plaintiff moved in. Plaintiff was the first renter at the house. The driveway was never paved and when defendant's father was alive he "would just put bucket tar and sweep it down the driveway" and then "put pea gravel on top of it." It had been more than 10 years since this had been done. Defendant's adult children, Robert and Lisa, were responsible for overseeing the property. Defendant retained the "last say" but most decisions were handled by them. They would have been able to take care of resurfacing the driveway without her approval. She stored a tractor and miscellaneous items in a garage on the property.

¶ 12    *3. Lisa Kaiser's Deposition*

¶ 13    Lisa testified she is defendant's eldest daughter and assisted in managing the rental property. The driveway had been "broke up" for years and she described it as being loose gravel next to the road and then "asphalt crumbles up through the driveway." She never considered the pieces of broken asphalt to be hazardous or a danger. She went on to the property with her son to repair a piece of soffit, and she "might go into the garage to get stuff because we had stuff out there that was left from my grandmother's house." She did not know whether plaintiff requested Robert to repair the driveway and she had "never heard him say that the driveway had to be repaired because of [plaintiff's] request."

¶ 14                              C. Defendant's Motion for Summary Judgment

¶ 15        In November 2012, defendant filed a motion for summary judgment. Defendant argued (1) she did not owe a duty of care because plaintiff fell in a public right-of-way, (2) the driveway condition was open and obvious, and (3) "plaintiff has failed to produce any evidence that the broken piece of asphalt is anything other than '*de minimus*.' " Defendant attached an affidavit from Kaiser, a survey plat of the property, and, later, a copy of the lease.

¶ 16        Kaiser's affidavit states (1) she is "familiar with the plat of the subject property"; (2) she "personally performed a measurement in this case of the distance between Gaule Road and the location of the utility pole on the property"; (3) "[t]the distance between the utility pole and the mailbox in this case is 8.5 feet"; and (4) "[c]omparing that distance with the distance on the plat of survey of the subject property indicates that the area where plaintiff fell was within the right-of-way owned by Rochester Township in this case. This is because the right-of-way extends 40 feet north of Gaule Road which would include the area encompassed by the utility pole. Given that the plaintiff allegedly fell between the utility pole and the mailbox on Gaule Road, it indicates that plaintiff would have fallen on the right-of-way property owned by Rochester Township."

¶ 17        The lease provides for monthly rent of $550. It does not include a provision stating who is responsible for repairs but states the security deposit would be refunded if, among other things, "an inspection shows no damage beyond ordinary wear and tear."


¶ 18                                   D. The Trial Court's Order

¶ 19        In February 2013, the trial court issued its written order and granted defendant's summary judgment motion. The court found the case presented no question of material fact the driveway's defect was concealed from plaintiff and no evidence defendant "took any efforts to control or make any repairs on the subject driveway prior to the fall." It found the "evidence is undisputed in this case that the area where plaintiff fell was on a public right-of-way." It concluded as a matter of law (1) the condition was open and obvious, and (2) the *de minimis* rule applies based on the fact it was a rural driveway and "the speculative nature of plaintiff's testimony about the size of the alleged defect."

¶ 20        This appeal followed.


¶ 21                                        II. ANALYSIS

¶ 22        Plaintiff appeals, arguing the trial court erred in granting defendant's motion for summary judgment. Plaintiff argues defendant owed her a duty of care because (1) "a private landowner owes a duty of care to provide a reasonably safe means of ingress and egress from their property," (2) defendant (a) made a promise at the time of the lease to repair the condition of the driveway and (b) voluntarily undertook to render a service to repair the driveway, (3) the condition was not open and obvious, and (4) the *de minimis* rule does not apply. Defendant argues she did not owe plaintiff a duty because (1) where plaintiff fell was located in a public right-of-way, (2) she had no obligation to repair or maintain the driveway, (3) the condition of the driveway was obvious and existed at the time of the lease, and (4)

plaintiff "failed to produce any evidence that the broken piece of asphalt was anything other than *de minimis*."

¶ 23    We consider the parties' specific arguments as interrelated issues affecting a landlord's duty of care to a tenant. We address them accordingly and conclude defendant did not owe a duty of care to plaintiff.

### A. Standard of Review

¶ 25    Section 2-1005 of the Code of Civil Procedure provides summary judgment shall be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005 (West 2012). "The purpose of summary judgment is not to try a question of fact but simply to determine if one exists." *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280, 864 N.E.2d 227, 232 (2007). "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Williams v. Manchester*, 228 Ill. 2d 404, 417, 888 N.E.2d 1, 9 (2008). "If the undisputed material facts could lead reasonable observers to divergent inferences, or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact." *Forsythe*, 224 Ill. 2d at 280, 864 N.E.2d at 232. "If the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is proper." *Williams*, 228 Ill. 2d at 417, 888 N.E.2d at 9. A trial court's grant of summary judgment is reviewed *de novo*. *Id.*

### B. Elements of Negligence and Duty

¶ 27    To succeed in an action for negligence, the plaintiff must establish the defendant owed a duty to the plaintiff, the defendant breached his or her duty, and the breach proximately caused injury to the plaintiff. *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 22, 980 N.E.2d 58. "In any negligence action, the court must first determine as a matter of law whether the defendant owed a duty to the plaintiff." *Id.* ¶ 34, 980 N.E.2d 58. In determinating whether a duty of care exists, Illinois courts typically consider: "(1) the reasonable foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against injury; and (4) the consequences of placing that burden on the defendant." *Wilfong v. L.J. Dodd Construction*, 401 Ill. App. 3d 1044, 1051-52, 930 N.E.2d 511, 519 (2010); *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 389, 706 N.E.2d 441, 446 (1998). "Absent a duty, 'no recovery by the plaintiff is possible as a matter of law.' " *Choate*, 2012 IL 112948, ¶ 22, 980 N.E.2d 58 (quoting *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 411, 583 N.E.2d 538, 541 (1991)).

### C. A Landlord's Duty of Care, Generally

¶ 29    It is well settled in Illinois a landlord is not liable to a tenant for injuries caused by a defective or dangerous condition, existing when the lessee took possession, on premises

leased to a tenant, and under the tenant's control. *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 220-21, 531 N.E.2d 1358, 1366 (1988). This rule is based on the principle the lease transfers the lessor's control over the property to the lessee. *Id.* at 221, 531 N.E.2d at 1366; *Wright v. Mr. Quick, Inc.*, 109 Ill. 2d 236, 238, 486 N.E.2d 908, 909 (1985). There are several exceptions to this rule, and a landlord may be liable where " '(1) a latent defect existed at the time of the leasing which lessor should have known about; (2) [there is] a fraudulent concealment by a landlord of a dangerous condition; (3) the defect causing the harm amounts to a nuisance; (4) the landlord makes a promise to repair a condition at the time of leasing; *** (5) the landlord violates a statutory requirement of which tenant is in the class designed to be protected and the resulting harm is reasonably foreseeable' " (*Bybee v. O'Hagen*, 243 Ill. App. 3d 49, 51, 612 N.E.2d 99, 101 (1993) (quoting *Moreno v. Balmoral Racing Club, Inc.*, 217 Ill. App. 3d 365, 367, 577 N.E.2d 179, 180-81 (1991))); or " '(6) the landlord voluntarily undertakes to render a service' " (*Gilley v. Kiddel*, 372 Ill. App. 3d 271, 275, 865 N.E.2d 262, 267 (2007) (quoting *Klitzka v. Hellios*, 348 Ill. App. 3d 594, 598, 810 N.E.2d 252, 256 (2004))). If the landlord retains control of the leased premises the general rule does not apply, and the landlord "has the duty, as the party in control, to use ordinary care in maintaining that part of the premises in a reasonably safe condition." *Rowe*, 125 Ill. 2d at 220, 531 N.E.2d at 1366.

¶ 30                              D. Defendant's Duty of Care to Plaintiff

¶ 31                              1. *Plaintiff's "Ingress and Egress" Argument*

¶ 32        Plaintiff relies on *Cooley v. Makse*, 46 Ill. App. 2d 25, 196 N.E.2d 396 (1964), and *McDonald v. Frontier Lanes, Inc.*, 1 Ill. App. 3d 345, 272 N.E.2d 369 (1971), in support of her argument defendant, as a landowner, owed a duty to provide a reasonably safe means of ingress and egress from the property. In *Cooley*, the plaintiff fell over some loose bricks in a walkway leading from the defendant tavern's front door to a city sidewalk. *Cooley*, 46 Ill. App. 2d at 26, 196 N.E.2d at 396. The Second District stated "the duty of the defendants to use due care not to negligently injure invitees upon their premises carries with it a corollary duty to get such invitees safely on or off their premises." *Id.* at 30, 196 N.E.2d at 398. Thus, the tavern "[h]aving prescribed the route to [its] invitees for ingress and egress to and from [its] building," owed a duty to warn or repair a known, dangerous condition. *Id.* at 31, 196 N.E.2d at 398. In *McDonald*, the plaintiff exited the defendant bowling alley and walked across the parking lot and approached her car, which was parked on the street. *McDonald*, 1 Ill. App. 3d at 350, 272 N.E.2d at 372. On crossing the sidewalk, the plaintiff stepped onto a grassy parkway and into a hole. *Id.* The Second District cited *Cooley* and agreed the duty to provide a reasonably safe means of ingress and egress can extend "beyond the precise boundaries" of the premises owned or controlled by the inviter. *Id.* at 351, 272 N.E.2d at 372. The appellate court concluded the duty "defendant owed to plaintiff was to exercise the care of a prudent man to provide reasonably safe means of egress from its premises and to give its invitee adequate warning of those dangers known to defendant which were not apparent." *Id.* at 353, 272 N.E.2d at 374.

¶ 33        Plaintiff asks too much from *Cooley* and *McDonald*. These cases framed their holdings

-6-

as an extension of the duty owed to an invitee to provide a reasonably safe premises and concerned an owner's or occupier's appropriation of an adjacent public sidewalk for his or her own use. Our case is quickly distinguishable; plaintiff was a tenant, not a visitor to a business establishment, and the alleged injury occurred on a driveway, not a public sidewalk. Further, plaintiff focuses on the word "landowner" and concludes defendant, as a landowner, must owe a duty to provide a reasonably safe means of ingress and egress. However, the rule not only applies to a "landowner," but also the party in possession of the premises. *Stedman v. Spiros*, 23 Ill. App. 2d 69, 81, 161 N.E.2d 590, 596 (1959). In other words, the rule plaintiff relies on states a party in possession has a duty to provide a reasonably safe means of ingress and egress. By operation of the lease, plaintiff, as the lessee, is the party in possession. This conflict may explain why plaintiff has not provided a single case extending *Cooley* or applying this rule to impose liability on a landlord for injuries sustained by a tenant on or about the leased premises. We decline plaintiff's invitation to do so here.

¶ 34                              2. *Defendant's "Right-of-Way" Argument*

¶ 35        In her summary judgment motion, defendant's main argument was she did not owe any duty to plaintiff because the fall occurred in a public right-of-way. Before this court, defendant argues "it is clear that [she] did not own the property where [plaintiff] allegedly fell" and "the evidence contradicts [the] bald conclusion" plaintiff fell in a private driveway. Defendant relies on Kaiser's affidavit and the survey plats for her contention plaintiff fell in a right-of-way owned by the Rochester Township. She relies on *Nicholson v. City of Danville*, 147 Ill. App. 3d 682, 498 N.E.2d 273 (1986), and *Gilmore v. Powers*, 403 Ill. App. 3d 930, 934 N.E.2d 564 (2010), in support of her argument she owes no duty based on where plaintiff fell. Defendant's argument is unpersuasive.

¶ 36        First, our review of Kaiser's affidavit shows several deficiencies. The affidavit provides the distance between the utility pole and the mailbox, but does not provide (1) the direction of the measurement, (2) the distance between the utility pole and the road, or (3) the distance between the mailbox and the road. This information is necessary to determine the distance the utility pole is from the road and whether such area is within the right-of-way. (We decline to consider the diagram drawn by defendant's attorney at plaintiff's deposition to determine the direction of the utility pole. At the deposition, defendant's attorney agreed the diagram was not to scale and it was "not going to depict the exact graphic location on the driveway where she fell.") Further, the affidavit states "the right-of-way extends 40 feet north of Gaule Road" but the survey plat appears to reflect the 40-foot measurement extends from the middle of the road and not the edge of the road, as Kaiser's affidavit implies. This leads to a general question of whether Kaiser is competent to testify about a survey plat where the affidavit does not state she has any experience or training in surveying. See Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013) (affidavit "shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto"). Moreover, the affidavit contains the *conclusion* plaintiff fell in the right-of-way, and without the distance between the utility pole and road there is no basis for this conclusion. See Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013) (affidavit "shall not consist of conclusions but of facts admissible in evidence"). In short, the affidavit provides little factual evidence other than the distance between the pole and the mailbox, and

this is not enough to conclusively resolve where plaintiff fell.

¶ 37    Second, defendant's reliance on *Nicholson* and *Gilmore* is misplaced. In *Nicholson*, the plaintiff fell while walking on a sidewalk adjacent to a drive-in theater and public highway in Danville. *Nicholson*, 147 Ill. App. 3d at 684, 498 N.E.2d at 273. The parties provided evidence from Danville's city engineer, commissioner of streets and public works, two engineers from the Illinois Department of Transportation, and an affidavit from a surveyor showing the sidewalk was within the highway's right-of-way and the state maintained the area next to the sidewalk. *Id.* at 685-87, 498 N.E.2d at 274-76. This court affirmed summary judgment in favor of the theater's owner because, while the evidence showed he swept the sidewalk while the theater was operating, he "had discontinued his voluntarily assumed duty prior to the time of [the plaintiff's] accident." *Id.* at 691, 498 N.E.2d at 278. In *Gilmore*, a mover was traversing a walkway which crossed over a public parkway, a grassy area between the street and sidewalk, when she fell. *Gilmore*, 403 Ill. App. 3d at 931, 934 N.E.2d at 565. The defendants cut the grass and raked leaves in the parkway, but argued the area was owned by the city, and they assumed no duty to maintain the walkway. *Id.* at 931-32, 934 N.E.2d at 566. The First District reiterated "an abutting landowner may be held responsible for the condition of a public sidewalk or parkway if he assumes control of it for his own purposes." *Id.* at 933, 934 N.E.2d at 567. But "the appellate court has found that no duty to maintain the city-owned property exists where the landowner merely maintains the property by mowing grass or shoveling and salting it in the winter." *Id.* at 933-34, 934 N.E.2d at 568. The First District went on to note its and the Second District's disagreement with this court's decision in *Smith v. Rengel*, 97 Ill. App. 3d 204, 422 N.E.2d 1146 (1981), "which holds that a landowner assumes control over city-owned property merely by mowing it and shoveling it." *Gilmore*, 403 Ill. App. 3d at 935-36, 934 N.E.2d at 569. See *Burke v. Grillo*, 227 Ill. App. 3d 9, 17, 590 N.E.2d 964, 969 (1992) (Second District); *Evans v. Koshgarian*, 234 Ill. App. 3d 922, 925, 602 N.E.2d 27, 29 (1992) (First District).

¶ 38    In our case, there are several distinctions with *Nicholson* and *Gilmore*: (1) Neither case addressed the duty of care owed by a landlord to a tenant for injuries sustained on the landlord's property or adjacent public property. (2) Neither case holds a private landowner has *no* responsibility for publicly owned areas, as defendant suggests, but rather a private landowner *may* be liable if the landowner controls the publicly owned area. (3) The evidence in *Nicholson* included testimony from public officials and surveyors with knowledge about the sidewalk's location in a right-of-way and who was responsible for maintaining the area, and in *Gilmore* it was undisputed the accident occurred on a publicly owned parkway. As discussed above, Kaiser's affidavit is insufficient to determine where the fall occurred and whether this was in a right-of-way. (4) The falls in *Nicholson* and *Gilmore* occurred on a sidewalk, not a rural driveway. (5) There is no evidence the township maintained the driveway or any member of the general public used the driveway. Rather, in the light most favorable to plaintiff, the evidence reflects the driveway was used exclusively to access defendant's private property and was built for such purpose. In short, defendant's position she has *no* duty based on the asserted fact the driveway crosses over a public right-of-way is not supported; rather, *Nicholson* and *Gilmore* support the position defendant might have a duty, even if the driveway crosses a public right-of-way.

-8-

¶ 39                    3. *Does the General Rule Bar Plaintiff's Claim?*

¶ 40    We have rejected plaintiff's attempt to expand a landlord's duty to include a duty to reasonably maintain a safe means of ingress and egress and defendant's argument she owes no duty because the driveway crosses a public right-of-way. We return to the general rule a landlord is not liable for injuries caused by a defective or dangerous condition on the premises leased to and under the tenant's control and whether an exception applies.

¶ 41                                a. Defendant's Control

¶ 42    Plaintiff contends defendant controlled the driveway because (1) she "altered not only the physical material comprising the driveway, but the grade of the driveway itself"; and (2) defendant, or her agents, made weekly deliveries of water to the rental house's cistern. We note plaintiff testified defendant, or her family, used the driveway approximately 20 to 25 times to access the property and a garage; defendant and Kaiser both testified a garage was used for storage; and Kaiser testified she went onto the property to access this garage. Plaintiff does not argue this shows defendant retained control and we need not consider arguments not made.

¶ 43    Here, the lease contained no provision stating defendant retained control of or restricted plaintiff's use and enjoyment of the driveway. Whether defendant made changes to the driveway *after* plaintiff moved off the property is distinct from whether she controlled the driveway when plaintiff lived there. See *Herzog v. Lexington Township*, 167 Ill. 2d 288, 300-01, 657 N.E.2d 926, 932 (1995) (evidence of postaccident remedial measures is not admissible to prove prior negligence but may be admissible to prove ownership or control of property). Defendant's weekly deliveries of water for use in the cistern shows defendant *used* the driveway for plaintiff's benefit–to ensure plaintiff had water–not that she maintained control over the driveway. In other words, by operation of the lease, defendant was no longer in control of the leased premises and no evidence indicates defendant retained control of the driveway. The general liability rule applies.

¶ 44                           b. Exceptions to the General Rule

¶ 45    Plaintiff contends two exceptions apply as defendant, or her agents, (1) made a promise at the time of leasing to repair the driveway and (2) voluntarily undertook to render a service to repair the driveway. Plaintiff does not indicate whether the promise to repair was before or after she signed the lease. Defendant argues any promise to repair (1) made prior to or contemporaneous with the lease and not included in the lease would be inadmissible and (2) made after the lease would be unenforceable because it was without consideration.

¶ 46    Generally, a landlord is not required to make any repairs to the leased property unless he or she agrees to do so by the terms of some express covenant or agreement. *Garcia v. Jiminez*, 184 Ill. App. 3d 107, 113, 539 N.E.2d 1356, 1359 (1989). However, a tenant's covenant to keep the premises in repair covers ordinary repairs and not " 'renewals and replacements which would last a lifetime.' " *Quincy Mall, Inc. v. Kerasotes Showplace*

*Theatres, LLC*, 388 Ill. App. 3d 820, 824, 903 N.E.2d 887, 890 (2009) (quoting *Sandelman v. Buckeye Realty, Inc.*, 216 Ill. App. 3d 226, 230, 576 N.E.2d 1038, 1040 (1991)).

¶ 47      The lease is silent about repairs to the property and does not contain a provision stating defendant promised to repair the driveway. In her deposition, plaintiff testified (1) she did a walk-through of the property before moving in and Robert told her "he was going to patch [the driveway] or replace it," (2) she orally requested the driveway be replaced "at least five times," (3) she heard Robert say "somebody's car was going to get tore up" on the driveway, and (4) Robert repaired the air conditioning. Considering the driveway's condition at the time of leasing, the expense, and the permanence of a driveway repair, such a repair would not be something a residential tenant would be expected to repair. But no evidence suggests defendant began a repair to the driveway before plaintiff's alleged injury, and we can quickly dismiss plaintiff's voluntary undertaking argument. Defendant's contention the parol evidence rule would bar introduction of the promise assumes a promise to repair is contrary to the lease, but here the lease does not contain a repair provision and the parties' deposition testimony reflected defendant, or her children, performed repairs to the property during plaintiff's tenancy. See *Hurt v. Pershing Mobile Home Sales, Inc.*, 83 Ill. App. 3d 724, 726, 404 N.E.2d 842, 843 (1980) (oral promise "directly contrary to the terms of the lease" unenforceable as a matter of substantive law because of the parol evidence rule); *Midway Park Saver v. Sarco Putty Co.*, 2012 IL App (1st) 110849, ¶ 22, 976 N.E.2d 1063 (parol or extrinsic evidence will not be admitted to vary or add to the terms of the contract where the terms of a contract are clear). Defendant is correct the promise would not be binding without consideration, but plaintiff's promise to pay rent could satisfy as consideration if the promise was made before the lease. See *McInerney v. Charter Golf, Inc.*, 176 Ill. 2d 482, 487, 680 N.E.2d 1347, 1350 (1997) (defining "consideration"). In short, in the light most favorable to plaintiff we must assume such a promise was made.

¶ 48                              *4. Was the Condition "Open and Obvious"?*

¶ 49      Plaintiff contends "it is clear that the nature of the piece of asphalt that broke when [she] stepped onto it" was not open and obvious as a matter of law. She posits factual issues exist whether (1) the defective condition was "apparent" and (2) the condition and risk would be recognized by a reasonable person. Plaintiff's argument distinguishes between the "visibly unbroken, apparently safe piece of asphalt" and the driveway as a whole. This is unpersuasive.

¶ 50      The open-and-obvious doctrine is an exception to the general duty a landowner or occupier owes to invitees. *Olson v. Williams All Seasons Co.*, 2012 IL App (2d) 110818, ¶ 42, 974 N.E.2d 914; see *Ward v. K mart Corp.*, 136 Ill. 2d 132, 150-51, 554 N.E.2d 223, 231-32 (1990). It "plays a large role in whether a duty exists because it relates to the issues of foreseeability and likelihood of injury." *Wilfong*, 401 Ill. App. 3d at 1052, 930 N.E.2d at 520; see also *Buerkett v. Illinois Power Co.*, 384 Ill. App. 3d 418, 422, 893 N.E.2d 702, 709 (2008) ("it is not foreseeable that an invitee will be injured when the condition is obvious or known"). "A condition is open and obvious where a reasonable person in the plaintiff's position, exercising ordinary perception, intelligence, and judgment, would recognize both

the condition and the risk involved." *Olson*, 2012 IL App (2d) 110818, ¶ 42, 974 N.E.2d 914. Known conditions are treated as obvious conditions and "[a] condition is 'known' where the plaintiff has ' "not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves." ' " *Belluomini v. Stratford Green Condominium Ass'n*, 346 Ill. App. 3d 687, 694, 805 N.E.2d 701, 707 (2004) (quoting *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 435, 566 N.E.2d 239, 241 (1990), quoting Restatement (Second) of Torts § 343A cmt. b, at 219 (1965)). "Where there is no dispute about the physical nature of the condition, whether a danger is open and obvious is a question of law." *Choate*, 2012 IL 112948, ¶ 34, 980 N.E.2d 58.

¶ 51    In *Wilfong*, the plaintiff was walking to a construction site and had to step in and out of ruts made by vehicle tires. *Wilfong*, 401 Ill. App. 3d at 1047, 930 N.E.2d at 516. He stepped out of one rut into another rut which gave way, and he fell. *Id.* at 1048, 930 N.E.2d at 516. The appellate court rejected the plaintiff's contention neither he nor any reasonable person could know "the particular rut he fell in would collapse." *Id.* at 1053, 930 N.E.2d at 521. The Second District framed the question as "whether a reasonable person would anticipate the danger of crossing over the ruts" and concluded a reasonable person would have "realize[d] that walking across the ruts on the site would present the danger of a rut collapsing or of tripping or otherwise falling." *Id.* at 1054, 930 N.E.2d at 521.

¶ 52    Our question is not whether a reasonable person would anticipate the danger of stepping on a single, unbroken piece of asphalt, as plaintiff asserts, but whether a reasonable person would anticipate the danger of walking on a visibly broken driveway. The physical condition of the driveway was described as having an incline, being constructed primarily of asphalt with broken pieces of asphalt and gravel, and having not been repaired for many years. Taken in the light most favorable to plaintiff, we assume the driveway was dangerous. Plaintiff testified at her deposition she was aware of the driveway's condition when she moved to the property in May 2008, she made five requests for the driveway to be repaired, and she used a "zigzag" route up and down the driveway to avoid the broken pieces. Plaintiff, by her own testimony, knew about the driveway's condition and proceeded to use it. This is not a case where the condition had never been seen before or was hidden, and plaintiff does not assert any exception to the open-and-obvious doctrine applies. See *Buchaklian v. Lake County Family Young Men's Christian Ass'n*, 314 Ill. App. 3d 195, 202, 732 N.E.2d 596, 601 (2000) (plaintiff had not previously seen elevation difference in locker room floor mat); *Olson*, 2012 IL App (2d) 110818, ¶ 43, 974 N.E.2d 914 (concluding fact issue existed where testimony varied about visibility of drop-off in warehouse floor); *Wilfong*, 401 Ill. App. 3d at 1054, 930 N.E.2d at 521 (discussing the "distraction" and "deliberate encounter" exceptions). It was open and obvious to plaintiff the whole driveway was in poor condition. Plaintiff was under the same obligation imposed on any person traversing the driveway to use ordinary perception, intelligence, and reasonable care for her own safety. Such a person would understand the risks associated with walking on an asphalt driveway with an incline, observe broken pieces of asphalt as an indication the driveway may continue to deteriorate and give way, resulting in a fall, and select an alternate route or means of conveyance if the driveway was not suitable for pedestrian use.

¶ 53                  5. *Defendant Did Not Owe Plaintiff a Duty of Care*

¶ 54      We return to our overarching duty analysis. Defendant, or her children, may have promised to repair the driveway, but it is undisputed plaintiff was aware of the driveway's condition and she continued to walk on it. Defendant could not have foreseen plaintiff would injure herself and was entitled to presume plaintiff would exercise caution when encountering an open and obvious condition. Plaintiff does not offer how defendant could have guarded against this injury. Plaintiff did not assert the driveway violated any applicable local, state, or federal housing regulation–this being an exception to the general landlord-liability rule. Defendant could not have provided an injury-proof driveway regardless of the material or grade. We decline the invitation to require her to provide such a driveway in a rural setting. We conclude defendant did not owe a duty to plaintiff.

¶ 55                               III. CONCLUSION

¶ 56      We affirm the trial court's judgment.

¶ 57      Affirmed.