2021 IL App (2d) 200660-U
No. 2-20-0660
Order filed July 22, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JAIME CONDER, | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 17-L-225 |
| | ) | |
| REALINGTON ENTERPRISES, LLC, d/b/a | ) | |
| STATELINE RENTAL PROPERTIES; | ) | |
| REALINGTON ENTERPRISES, LLC-NEXT; | ) | |
| STATELINE RENTAL PROPERTIES- | ) | |
| REALINGTON ENTERPRISES, LLC, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Realington Enterprises, LLC-Next, | ) | Donna R. Honzel, |
| Defendant-Appellee). | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices Hudson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court properly granted summary judgment in the landowner's favor where there was no genuine issue of material fact with respect to (1) the open and obvious hazardous condition of the driveway upon which plaintiff fell or (2) the inapplicability of the distraction exception to the open-and-obvious doctrine. Affirmed.

¶ 2    Plaintiff, Jaime Conder, appeals from the trial court's order granting summary judgment in favor of defendant, Realington Enterprises, LLC-Next (Realington) in this premises liability action. For the reasons set forth below, we affirm.

¶ 3                    I. BACKGROUND

¶ 4    The following is derived from the pleadings, depositions, and documents on file.

¶ 5                    A. The Incident

¶ 6    Plaintiff was injured when she tripped and fell after stepping into a pothole in the driveway for the apartment building located at 3024 Jacqueline Court in Rockford. The operative complaint (the first amended complaint) alleged that the pothole created an uneven and jagged surface that was unnoticed by plaintiff. According to the first amended complaint, the incident occurred "on or around August 14, 2015." However, it was unclear from plaintiff's deposition testimony whether the incident occurred on August 13, 2015, or August 14, 2015, although the distinction is ultimately immaterial.

¶ 7    The apartment building at 3024 Jacqueline Court is part of a four-building apartment complex on Jacqueline Court. Three driveways, connected by a cul-de-sac, service the four apartment buildings and each driveway leads to parking lots for the respective buildings. Upon entry to the cul-de-sac, the driveway to the left is the driveway leading to the 3024 Jacqueline Court apartment building. The apartment building is at the top of the hill on which the driveway is situated.

¶ 8    Realington owned the Jacqueline Court apartment complex at the time of the incident, having purchased the complex in June 2015 (two months before the incident). Stateline Rental Properties-Realington Enterprises, LLC (Stateline), a real estate management company, managed the complex for Realington at the time of the incident, and also had managed it for at least two

years before the incident pursuant to a property management contract with the prior owners. Rick Davis, Realington's operating manager, has an ownership interest in both Realington and Stateline.

¶ 9    Plaintiff was an independent contractor for Stateline at the time of the incident and had been so since approximately 2010 or 2011. As part of her duties, she worked with landlords to review management agreements, inspect units prior to leasing, maintain and inspect rental properties, serve eviction notices, and provide cleaning services. She had performed these duties at the Jacqueline Court apartment complex for at least two years prior to the date of the incident.

¶ 10    On the date of the incident, plaintiff met off-duty Belvidere police officer David Dammon at the Jacqueline Court apartment complex. Dammon performed private security services for Stateline. The impetus for the meeting was a concern regarding illegal drugs on the premises. Plaintiff parked in the cul-de-sac. Plaintiff testified that it was "late afternoon, maybe early evening" and that it was "daylight" and "sunny" at the time. Plaintiff had glasses and was wearing them at the time, and nothing obstructed her vision.

¶ 11    Plaintiff and Dammon first went to the apartment building at 3027 Jacqueline Court (the location of a suspected drug dealer), which is to the right upon entry to the cul-de-sac. From there, they walked across the lawn to the two center buildings (which shared one of the three driveways) so that Dammon could view the entire property. They proceeded across the grass to the apartment building at 3024 Jacqueline Court.

¶ 12    At this point, they walked down the 3024 Jacqueline Court driveway toward the cul-de-sac, with plaintiff to the "left-center" of the driveway and Dammon to her right. Plaintiff and Dammon were conversing as they walked. They were approximately "mid to two-thirds of the way up the drive if you were coming in from the bottom of Jacqueline Court" when the incident occurred. Plaintiff testified: "I was walking down the driveway, talking with Dave, and there was

an apparent hole that was filled in with crushed asphalt. And a section of that was missing, and I caught it with the front of my foot." She was wearing flip flops at the time, and the flip flop came off her foot. Plaintiff testified that she was looking at Dammon and did not see the defect in the pavement before she fell. She stated that she typically does not look at the placement of her feet while walking. Dammon unsuccessfully attempted to grab plaintiff's arm as she was falling.

¶ 13    Plaintiff further testified that, at the time of the incident, she was not doing anything that drew her attention away from where she was walking. Rather, she "was just talking to [Dammon]." Moreover, she stated that her view of the ground was unobstructed, she was not looking at a cell phone or reading documents, and the sun was neither in her eyes nor caused her to have any trouble with her vision. Plaintiff testified that, after she fell, she walked through the adjacent grass down to her car in the cul-de-sac and proceeded to seek medical treatment for her left ankle.

¶ 14    Plaintiff estimated that the hole filled with crushed asphalt was 8 and one-half inches wide and 11 inches long. Plaintiff explained that, while the hole had been filled in with crushed asphalt, there was a "gap" in the filling where "maybe the rain had washed" some of the crushed asphalt away. She estimated that the gap was 6 inches wide, 3 inches long, and 2 and one-half inches deep. Plaintiff testified regarding her knowledge that Davis "had dumped some crushed asphalt in there" and that she was "in [Davis's] office when he gave the direction to Brian Kern to get it ordered." Kern was the maintenance manager for the properties that Stateline managed, including the Jacqueline Court apartment complex. Plaintiff did not know the precise date that crushed asphalt was put there but testified that, "I know that he dumped it. So when we were out there prior, there was crushed asphalt." She further testified that she observed the crushed asphalt on the driveway at some point between May 2015 and August 2015.

¶ 15    Plaintiff testified that, had she been looking at her feet while walking down the driveway, she did not know whether she would have seen the defect. According to plaintiff, "the crushed asphalt blends with the old asphalt" and thus "it just kind of blends together." Nevertheless, plaintiff testified, when she sat down after falling, she observed the defect. She also testified that, if Davis had been at 3024 Jacqueline Court, "he would see that there were problems on the driveway, yes." She believed that the entire driveway needed attention. When questioned as to "[w]hat would have prevented [her] from seeing that hole before [she] stepped into it if [she] could see it when [she was] standing over it," plaintiff responded: "[t]he gravel that was on the ground."

¶ 16    Plaintiff testified that, in the course of her duties as an independent contractor for Stateline, she previously had been to 3024 Jacqueline Court. She acknowledged that, prior to the date of the incident, she "probably" had walked either up or down the driveway to 3024 Jacqueline Court but was not certain. Specifically, plaintiff testified: "I don't know. I walked these properties all the time. So I walked all the properties all the time. So to say have I ever walked up and down it [the driveway to 3024 Jacqueline Court], probably." Plaintiff further testified that she had traversed the 3024 Jacqueline Court driveway by foot or car "no more than 20" times before the incident, with "five or less" trips across the driveway by foot. Plaintiff explained that she parked in the cul-de-sac and walked up and down the driveway when the nature of the business required a relatively longer stay. If she were there merely to serve a "five-day notice" or speak to a tenant, then she would drive her car up and down the driveway to the apartment building. The evidence established that plaintiff cleaned apartments at 3024 Jacqueline Court on seven occasions between July 2014 and August 2015, including cleanings on July 30, 2015, and August 10, 2015.

¶ 17    Plaintiff acknowledged that she had walked on the 3024 Jacqueline Court driveway within 30 to 40 days before the incident. However, she testified that she had been there at night for a

medical issue at the building and that it was dark outside. Nevertheless, she had a flashlight, and the driveway was illuminated by the headlights of an ambulance in the cul-de-sac.

¶ 18    Dammon testified that, after plaintiff tripped, he helped her up and to her car. He had been at 3024 Jacqueline Court to serve process in the month or two before the incident and testified that the driveway was crumbling or broken up in various spots and in the same condition as it was on the day of the incident. He agreed that the driveway had a lot of "spider cracks," some holes, some depressions, and some divots in various areas of its length. He stated that much of the driveway surface was cracked and broken and that there were other areas of the driveway besides where plaintiff fell that were in disrepair with broken and crumbling asphalt, although he did not expect a "divot" as deep as the divot into which plaintiff fell. He stated that the divot did not stand out and that he did not see the divot before the fall. However, he testified, "[y]ou could see that the drive was broken going down," that it was "all spider cracked," and that "[s]ome of them [(the "divots" or "broken concrete")] were bigger than others." He further agreed that the deteriorated condition of the driveway was open and obvious to anyone who observed it.

¶ 19    In response to interrogatories requesting a detailed description of the defect that caused her injury and any photographs of the location of the incident, plaintiff produced 10 photographs. She did not identify the date that the photographs were taken. The photographs were introduced as exhibits at plaintiff's deposition. Plaintiff testified that she took the photographs with her cell phone in May 2016—approximately nine months after the August 2015 incident. Plaintiff identified Exhibit 6A as the photograph depicting the general location of the subject defect, circled and initialed the general location of her fall, and drew a smaller circle therein with a line pointing to the specific defect that caused her fall. However, plaintiff testified that the defect in the area that

she circled was "wider" in the photograph than it was on the day of the incident in August 2015 and that the driveway had more holes at the time of the photograph.

¶ 20    Davis testified that he was aware of several defects in the driveway at the time Realington purchased the property in June 2015. He stated that the condition of the driveway in the photograph looked substantially similar to the condition of the driveway at the time of the purchase. Kern, the maintenance manager, testified that the defects in the driveway existed at the time Realington purchased the property and that the photograph was generally reflective of the condition of the driveway at the time of the incident. Kern further testified that the condition of the driveway, with its the spider cracks and fissures, was open and obvious to anyone looking at the pavement.

¶ 21                              B. Procedural History

¶ 22    Plaintiff filed her initial complaint on July 21, 2017, but subsequently was granted leave to filed an amended complaint. The first amended complaint alleged premises liability against Realington; Stateline; and Realington Enterprises, LLC, doing business as Stateline Rental Properties. The latter two entities were dismissed with prejudice, leaving Realington as the sole defendant. Plaintiff alleged that Realington was negligent in failing to inspect and maintain the driveway in a safe condition by "allowing said surface to remain jagged and uneven" and in failing to warn of an unreasonably dangerous condition on the driveway. Realington answered, denying the substantive allegations, and raised the affirmative defense of contributory negligence.

¶ 23                              1. Summary Judgment Motion

¶ 24    Following the close of non-medical fact discovery, Realington moved for summary judgment. Realington argued that the deteriorated condition of the 3024 Jacqueline Court driveway was an open and obvious condition about which it had no duty to warn and that plaintiff's comparative fault barred her recovery as a matter of law. In her response in opposition to summary

judgment, plaintiff argued that there was a genuine issue of material fact regarding the open and obvious condition of the particular defect that caused her fall. Plaintiff distinguished the "spider cracks" or "loose gravel" on the driveway (which she characterized as arguably *de minimis* in nature and therefore not actionable) from the "divot" or "hole" that caused her fall. Plaintiff also argued that, even if the defect were open and obvious, there was a genuine issue of material fact as to whether Realington nonetheless owed her a duty under the distraction exception to the open-and-obvious doctrine. Plaintiff did not respond to Realington's argument that her comparative fault barred recovery.

¶ 25    The trial court heard oral argument on Realington's summary judgment motion on September 9, 2020, and took the matter under advisement.[1]

¶ 26                                    2. Trial Court's Ruling

¶ 27    On October 16, 2020, the trial court issued a memorandum of decision and order, granting summary judgment in Realington's favor. The trial court found no genuine issue of material fact with respect to the open and obvious condition of the 3024 Jacqueline Court driveway. Specifically, the evidence established that the driveway "had a decline in the direction plaintiff was walking, was clearly in need of repair, had spider cracks, crumbling asphalt, depressions, divots, and some holes filled in with crushed asphalt/gravel." The trial court noted plaintiff's agreement that someone looking at the driveway could see several defects other than the one where she fell, that there were obvious defects in the drive, and that Davis would have been able to see several holes if he had looked at the driveway. The trial court also noted Dammon's agreement

---

[1] The record on appeal does not include a report of proceedings from the September 9, 2020, hearing.

regarding the driveway's state of disrepair. Nevertheless, the trial court reasoned, plaintiff testified that she neither looked where she was walking nor changed her route to avoid the holes. The trial court also pointed out plaintiff's awareness of the driveway's condition and of Realington's use of crushed asphalt to fill the holes.

¶ 28    Moreover, the trial court found no genuine issue of material fact with respect to the inapplicability of the distraction exception to the open-and-obvious doctrine. The trial court reasoned that nothing required plaintiff to be looking at Dammon while talking and walking. Rather, "choosing to look at Dammon and not looking at the path she was traversing, even though that was her habit, was completely her own independent act and one which was not foreseeable to [Realington] and not created by [Realington]."

¶ 29    In addition to its determination that the open-and-obvious doctrine applied without exception as a matter of law, the trial court further found that the burden to continuously guard against the alleged erosion of the crushed asphalt/gravel and of someone tripping and falling on the driveway "would likely be great and the consequences of doing so likely time-consuming and expensive just as a matter of common sense." Accordingly, the trial court held that Realington did not owe plaintiff a duty of care as a matter of law.

¶ 30    Plaintiff timely appealed.

¶ 31                                    II. ANALYSIS

¶ 32    Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). "The purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine question of material fact exists." *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154,

162 (2007). In determining whether there is a genuine issue of material fact, the pleadings, depositions, admissions, and affidavits must be construed strictly against the movant and liberally in favor of the opponent. *Id.* A triable issue of fact exists where there is a dispute as to a material fact or where, although the material facts are not in dispute, reasonable minds might differ in drawing inferences from those facts. *Id.* at 162-63. Summary judgment should be allowed only where the movant's right to judgment is "clear and free from doubt." *Id.* at 163. We review summary judgment rulings *de novo*. *Id.*

¶ 33    With these concepts in mind, we turn to plaintiff's arguments on appeal. Plaintiff contends that the trial court improperly focused on the general condition of the 3024 Jacqueline Court driveway, rather than the condition of the particular defect on which she tripped, in applying the open-and-obvious doctrine. According to plaintiff, there was a genuine issue of material fact regarding the visibility of the particular defect. Plaintiff also contends that there was a genuine issue of material fact as to whether she was distracted at the time of the incident.

¶ 34    Realington responds that the alleged defect was open and obvious as a matter of law and that there was no evidence that plaintiff was distracted at the time of the incident. Realington also contends that it owed no duty to plaintiff because the alleged defect was *de minimis* and that plaintiff's comparative negligence barred recovery as a matter of law. As set forth below, we hold that the trial court properly granted summary judgment in Realington's favor on the basis that the open-and-obvious doctrine applied without exception as a matter of law. We therefore need not address Realington's other arguments.

¶ 35                  A. Open and Obvious Condition

¶ 36    To sustain her negligence action, plaintiff was required to present sufficient factual evidence to establish that Realington owed her a duty of care, that Realington breached that duty,

and that the breach proximately caused her injury. *Lee v. Lee*, 2019 IL App (2d) 180923, ¶ 13. There can be no liability if there is no legal duty. *Id.* The existence of a duty is a question of law and involves consideration of whether a relationship existed between the parties such that a legal obligation is placed upon one party for the other party's benefit. *Id.* The following four factors guide this consideration: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant. *Id.* ¶ 14.

¶ 37    In a premises liability action, the foreseeability of the injury is determined with reference to section 343 of the Restatement (Second) of Torts. *Rozowicz v. C3 Presents, LLC*, 2017 IL App (1st) 161177, ¶ 14 (citing *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 468 (1976)). Section 343 provides:

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger."

Restatement (Second) of Torts § 343 (1965).[2]

---

[2] An "invitee" is either a "public invitee" or a "business visitor" as defined in section 332 of the Restatement (Second) of Torts (1965). There was no dispute that plaintiff was a "business visitor."

¶ 38    However, section 343A(1) sets forth the "open-and-obvious" exception to the duty of care articulated in section 343, as follows: "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Id.* § 343A(1); *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 149 (1990). The determination of whether a condition is open and obvious is an objective test. *Wilfong v. L.J. Dodd Construction*, 401 Ill. App. 3d 1044, 1052 (2010). The possessor of land does not owe a duty of care to invitees when a condition is open and obvious because the possessor "could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition." *Ward*, 136 Ill. 2d at 148.

¶ 39    " 'Known' " for purposes of the open-and-obvious doctrine means " 'not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves.' " *Peters v. R. Carlson & Sons, Inc.*, 2016 IL App (1st) 153539, ¶ 15 (quoting Restatement (Second) of Torts § 343A cmt. b (1965)). " '[O]bvious' " means that " 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.' " *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 16 (quoting Restatement (Second) of Torts § 343A cmt. b (1965)). Where the physical nature of a dangerous condition is not disputed, the determination of whether the dangerous condition is open and obvious is a question of law. *Id.* ¶ 18; *Nida v. Spurgeon*, 2013 IL App (4th) 130136, ¶ 50.

¶ 40    Here, plaintiff argues that there was a factual dispute regarding the condition of the driveway and the visibility of the particular defect on which she fell. According to plaintiff, it was disputed whether the photograph in Exhibit 6A, taken approximately nine months after the incident, accurately depicted the defect that caused her fall. Namely, plaintiff testified that the hole

was wider in the photograph than it was on the day of the incident and that the photograph reflected more holes in the driveway than were present on the date of the incident.

¶ 41    Realington responds there was no factual dispute regarding the condition of the defect or driveway because plaintiff judicially admitted that Exhibit 6A accurately depicted the condition by producing the photograph (as well as other photographs of the driveway) in her sworn response to an interrogatory request for a detailed description of the defect that caused her injury. See *Hansen v. Ruby Construction Co.*, 155 Ill. App. 3d 475, 480 (1987) ("A judicial admission is a deliberate, clear, unequivocal statement of a party about a concrete fact within that party's peculiar knowledge."). Realington likens this case to *Hansen*, in which the plaintiff testified during his deposition that he fell as a result of rubber bumpers on the edge of a loading dock but later attempted to change his answer to cite a different cause for his fall. *Id.* at 477-78. In affirming summary judgment in the defendant's favor, the appellate court noted that a party cannot create a genuine issue of material fact by taking contradictory positions when convenient and held that the plaintiff's unequivocal statement in his deposition regarding the cause of his fall was a judicial admission. *Id.* at 480-82.

¶ 42    Initially, we note that Realington argued for the first time in its reply in support of summary judgment that plaintiff's interrogatory response constituted a judicial admission. The argument was not mentioned in the trial court's October 16, 2020, order. Nevertheless, plaintiff does not point this out or argue forfeiture. Rather, she replies that her production of the photographs did not amount to an unequivocal admission regarding the condition of the defect or the driveway on the date of the incident. To the contrary, plaintiff points out, she testified at her deposition that the photographs did not depict the condition. Plaintiff misses the point. Realington's argument is that

plaintiff made the judicial admission in her interrogatory responses and then impermissibly took a contradictory position at her deposition.

¶ 43    Ultimately, however, we need not resolve whether plaintiff's interrogatory responses amounted to a judicial admission. Whether the photographs reflected the condition of the defect or the driveway at the time of the incident is not material here given the undisputed testimony regarding the visibly broken nature of the driveway at the time of the incident. Namely, Dammon testified that the driveway had holes, depressions, and divots and that much of the driveway was cracked and broken. He asserted that the deteriorated condition of the driveway was open and obvious to anyone who observed it. There was no contradictory evidence presented. Rather, plaintiff testified that, if Davis had been at the driveway, "he would see that there were problems on the driveway, yes." Plaintiff believed that the entire driveway needed attention. Both Davis and Kern likewise testified regarding the defects in the driveway and the open and obvious deteriorated condition of the driveway. The photographs, which were taken nine months after the incident, do not refute the foregoing testimony regarding the deteriorated condition of the driveway at the time of the incident.

¶ 44    Plaintiff nevertheless likens this case to numerous decisions in which a material factual dispute regarding alleged obstructions to the visibility of a hazardous condition precluded a determination of the open-and-obvious doctrine as a matter of law. See, *e.g.*, *Olson v. Williams All Seasons Co.*, 2012 IL App (2d) 110818, ¶ 43 (dim lighting); *Van Gelderen v. Hokin*, 2011 IL App (1st) 093152, ¶¶ 23, 30 (visibility of basement staircase in relation to placement of door and direction it opened); *Alqadhi v. Standard Parking, Inc.*, 405 Ill. App. 3d 14, 15-16, 18 (2010) (dim lighting and optical illusion of a flat walking surface); *Duffy v. Togher*, 382 Ill. App. 3d 1, 11 (2008) (optical illusion as to depth of pool); *Buchaklian v. Lake County Family Young Men's*

*Christian Ass'n*, 314 Ill. App. 3d 195, 202 (2000) (size and lack of contrast in locker room mat). These decisions are inapposite. As discussed, there was no dispute here that the deteriorated condition of the 3024 Jacqueline Court driveway was visible. Plaintiff testified that it was "daylight" and "sunny" at the time of the incident, she was wearing her glasses, and nothing obstructed her vision.

¶ 45    Further, plaintiff maintains that the material disputed issue is not the visibility of the general condition of the 3024 Jacqueline Court driveway, but rather the visibility of the particular defect on which she tripped. She cites her testimony and Dammon's testimony that the particular hole or divot on which she tripped was not prominent. The appellate court in *Nida*, 2013 IL App (4th) 130136, ¶ 52, rejected the same argument under virtually identical facts. There, the plaintiff tenant fell and injured her ankle while walking on the driveway when a piece of the driveway broke. *Id.* ¶ 9. Summary judgment on the plaintiff's personal injury claims was granted in the defendant owner's favor on grounds, *inter alia*, that the driveway's dangerous condition was open and obvious as a matter of law. *Id.* ¶ 19.

¶ 46    In affirming, the appellate court rejected the plaintiff's attempt to distinguish between the " 'visibly unbroken, apparently safe piece of asphalt' and the driveway as a whole." *Id.* ¶ 49. The court noted, "Our question is not whether a reasonable person would anticipate the danger of stepping on a single, unbroken piece of asphalt, as plaintiff asserts, but whether a reasonable person would anticipate the danger of walking on a visibly broken driveway." *Id.* ¶ 52. Viewing the evidence in the light most favorable to the plaintiff, the court assumed that the driveway was dangerous. *Id.* The driveway had an incline, was constructed primarily of asphalt with broken pieces of asphalt and gravel, and was in a state of disrepair. *Id.*

¶ 47    However, the court reasoned, the evidence established that the plaintiff was aware of the driveway's condition, walked on the driveway in a " 'zigzag' " manner to avoid broken pieces of asphalt, and had repeatedly requested that the defendant repair the driveway. *Id.* The plaintiff "was under the same obligation imposed on any person traversing the driveway to use ordinary perception, intelligence, and reasonable care for her own safety" and "to understand the risks associated with walking on an asphalt driveway with an incline, observe broken pieces of asphalt as an indication the driveway may continue to deteriorate and give way, resulting in a fall, and select an alternate route ***." *Id.* Accordingly, the driveway's dangerous condition was open and obvious as a matter of law, and the defendant "was entitled to presume plaintiff would exercise caution when encountering an open and obvious condition." *Id.* ¶¶ 19, 52-54.

¶ 48    Likewise, in *Wilfong*, the plaintiff was injured when he fell while walking across vehicle tire ruts at a construction site. *Wilfong*, 401 Ill. App. 3d at 1047. As he stepped out of one rut and into another rut, " 'the side of the rut *** gave way' " and caused him to fall. *Id.* at 1048. In affirming summary judgment in the defendants' favor, this court rejected the plaintiff's contention that neither he nor any reasonable person could have anticipated that the particular rut into which he stepped would collapse. *Id.* at 1053. "[T]he question is not whether one particular rut would collapse, but rather whether a reasonable person would anticipate the danger of crossing over the ruts." *Id.* at 1053-54. The court concluded that a reasonable person would have realized that walking across the ruts on the site presented the "danger of a rut collapsing or of tripping or otherwise falling." *Id.* at 1054. Thus, the danger created by the ruts was open and obvious as a matter of law. *Id.*

¶ 49    Similarly, in the instant case, there was no genuine issue of material fact with respect to the deteriorated condition of the 3024 Jacqueline Court driveway, with its depressions, divots and

holes filled in with crushed asphalt. Indeed, plaintiff testified at length regarding her knowledge of the driveway's condition and of Realington's use of crushed asphalt to fill the holes. The evidence also established that plaintiff had traversed the 3024 Jacqueline Court driveway on many occasions, including in the month prior to prior to the incident. We reject plaintiff's attempt to distinguish between the particular hole on which she tripped and the overall perforated condition of the driveway. See *Nida*, 2013 IL App (4th) 130136, ¶ 49; *Wilfong*, 401 Ill. App. 3d at 1053. The issue is not whether a reasonable person would anticipate the danger of stepping on a single hole, but rather whether a reasonable person would anticipate the danger of walking on the visibly broken 3024 Jacqueline Court driveway. See *Nida*, 2013 IL App (4th) 130136, ¶ 52; *Wilfong*, 401 Ill. App. 3d at 1053-54. There was no genuine issue of material fact that a reasonable person would anticipate the danger of walking on the driveway. For these reasons, the trial court properly held that the open-and-obvious doctrine applied as a matter of law.

¶ 50                          B. Distraction Exception

¶ 51     Even if a condition is open and obvious, a possessor of land may still be liable where the harm should be anticipated despite the condition's obviousness. *Wilfong*, 401 Ill. App. 3d at 1054; Restatement (Second) of Torts § 343A(1) (1965). One such instance is the "distraction exception" to the open-and-obvious doctrine, where the possessor "has reason to expect that the invitee's attention may be distracted so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." Restatement (Second) of Torts § 343A cmt. f (1965); *Lee*, 2019 IL App (2d) 180923, ¶ 17. "[T]he distraction exception only applies where it is reasonably foreseeable that a plaintiff might be so distracted that she blunders into an open and obvious danger." *Negron v. City of Chicago*, 2016 IL App (1st) 143432, ¶ 17 (citing *Ward*, 136 Ill. 2d at 148). The mere possibility that a person might be distracted does not equate to the

foreseeability of a particular distraction in a legal sense. *Id.* A contrary holding would "saddle landowners with the impossible burden of rendering their land injury-proof, a result which our supreme court has explicitly rejected." *Id.* (citing *Ward*, 136 Ill. 2d at 156).

¶ 52     Plaintiff argues that Realington should have reasonably anticipated that an invitee walking down the driveway in its state would likely be focused on other potential hazards, such as vehicles, and therefore not notice an otherwise obvious condition. As a preliminary matter, however, plaintiff ignores the threshold requirement underlying application of the distraction exception— evidence that she was actually distracted. See *Bruns*, 2014 IL 116998, ¶ 22 ("The distraction exception will only apply where evidence exists from which a court can infer that plaintiff was actually distracted."). Here, plaintiff points to no evidence that she was actually distracted when she fell. To the contrary, plaintiff testified that she was not doing anything that drew her attention away from where she was walking and that nothing obstructed her vision.

¶ 53     Plaintiff's testimony was that she "was just talking to [Dammon]." To the extent plaintiff maintains that conversing with and looking at Dammon amounted to a distraction, the argument has no merit. "[T]he mere fact of looking elsewhere does not constitute a distraction." *Id.* Thus, in *Bruns*, our supreme court rejected the plaintiff's reliance on the distraction exception where the plaintiff was merely looking toward the door of the clinic at which she had an appointment when she stubbed her toe on an open and obvious sidewalk crack. *Id.* ¶ 30. In doing so, the court found distinguishable the very same three cases upon which plaintiff relies here on grounds that all three cases involved the presence of circumstances that required the diversion of the plaintiff's attention from the open and obvious danger. *Id.* ¶¶ 24-30 (distinguishing, *inter alia*, *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14, 28-29 (1992) (distracted by need to protect against a misstep on a billboard walkrail); *Deibert v. Bauer Brothers*

*Construction Co.*, 141 Ill. 2d 430, 439 (1990) (distracted by need to protect against falling debris); *Ward*, 136 Ill. 2d at 153-54 (distracted by carrying bulky merchandise from a store)). In contrast, the court reasoned, the plaintiff in *Bruns* failed to identify any circumstance, much less a reasonably foreseeable circumstance, that required the diversion of her attention from the open and obvious sidewalk defect. *Id.* ¶ 30.

¶ 54     Moreover, the court in *Bruns* held that, even if the mere act of looking elsewhere could be deemed a distraction, "it is, at most, a self-made distraction." *Id.* ¶ 31. However, " 'a plaintiff should not be allowed to recover for self-created distractions that a defendant could never reasonably foresee.' " *Id.* (quoting *Whittleman v. Olin Corp.*, 358 Ill. App. 3d 813, 817-18 (2005)). To conclude otherwise and hold that "simply looking elsewhere constitutes a legal distraction" would allow the distraction exception to swallow the open-and-obvious rule. *Id.* ¶ 34.

¶ 55     Likewise, here, there was no evidence presented that plaintiff focused her attention on Dammon to avoid another hazard or potential hazard or that plaintiff failed to avoid the driveway defect because another task required her attention. Rather, at most, plaintiff's failure to pay attention to the driveway was a self-made distraction that was not reasonably foreseeable by Realington. See *id.*

¶ 56     In sum, the trial court properly determined that the open-and-obvious doctrine applied without exception as a matter of law. This court has stated that, under these circumstances, where the condition is open and obvious, and no exception applies, " 'then there is no duty.' " *Lee*, 2019 IL App (2d) 180923, ¶¶ 17-18 (quoting *Bujnowski v. Birchland, Inc.*, 2015 IL App (2d) 140578, ¶ 30). In other words, where a condition is open and obvious and no exception applies, the first two factors of the four-factor test for the existence of a legal duty (the reasonable foreseeability of the injury and the likelihood of the injury) establish the absence of a duty, and the last two factors (the

magnitude of the burden of guarding against the injury and the consequences of placing that burden on the defendant), " 'however strongly they militated in favor of a duty, *cannot* outweigh the first two factors.' " (Emphasis in original.) *Id.* ¶ 18 (quoting *Bujnowski*, 2015 IL App (2d) 140578, ¶ 30). We acknowledged in *Bujnowski* that courts nonetheless have analyzed the last two factors despite finding a condition open and obvious without exception. *Bujnowski*, 2015 IL App (2d) 140578, ¶ 55. However, we noted: "[T]here is one consistent thread in the case law. No published premises-liability negligence case that we have found held both (1) that the open-and-obvious rule applied without exception and (2) that the defendant nonetheless owed the plaintiff a duty." *Id.*

¶ 57    Here, plaintiff does not argue that the magnitude of the burden of guarding against the injury and the consequences of placing that burden on Realington outweigh the first two factors. In any event, based upon our review of the undisputed facts in the record, we agree with the trial court's determination that the burden to continuously guard against the alleged erosion of the crushed asphalt and of someone tripping and falling on the driveway as described in this case "would likely be great and the consequences of doing so likely time-consuming and expensive just as a matter of common sense." Accordingly, Realington did not owe plaintiff a legal duty as a matter of law.

¶ 58                                III. CONCLUSION

¶ 59    For the reasons stated, we affirm the trial court's order granting Realington's motion for summary judgment.

¶ 60    Affirmed.