NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 231487-U

NO. 4-23-1487

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 5, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| MICHAEL COX and SUSAN COX, | ) | Appeal from the |
|     Plaintiffs-Appellants, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| DONALD POE; POE ENTERPRISES, INC; and | ) | No. 20L30 |
| MITCHELL CLARK, | ) | |
|     Defendants | ) | Honorable |
| (Donald Poe and Poe Enterprises, Inc., Defendants- | ) | Gail L. Noll, |
| Appellees). | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Zenoff and Knecht concurred in the judgment.

**ORDER**

¶ 1      *Held*: The trial court did not err in granting the Poe defendants' motion for summary judgment where no genuine issues of material fact existed regarding plaintiffs' claims that those defendants were vicariously or directly liable for plaintiffs' alleged injuries.

¶ 2      Plaintiffs, Michael and Susan Cox, filed a negligence action against defendants, Donald Poe, Poe Enterprises, Inc. (Poe Enterprises), and Mitchell Clark, seeking to recover money damages for injuries Michael sustained after his motorcycle allegedly slid on grass clippings that accumulated on a public roadway. The clippings were adjacent to property defendant Clark leased from defendant Poe, who was also part owner of Clark's employer, Poe Enterprises. The trial court granted summary judgment in favor of Poe and Poe Enterprises (collectively, the Poe defendants) as to all counts against them, and plaintiffs appeal. We affirm.

¶ 3                          I. BACKGROUND

¶ 4       On September 23, 2019, Michael was involved in a single-vehicle motorcycle accident at the intersection of Sherman and Guest Roads in Sherman, Illinois. Defendant Clark resided at 4872 Sherman Road on one corner of the same intersection in a residence he leased from Poe, who owned the property. Clark also worked as a farmhand for Poe Enterprises, which Poe owned along with his wife and son. At the time of the accident, Clark was mowing the lawn of the Sherman Road property. The property consisted of a house, yard, gravel driveway, small shed, large shed, and grain bin. It was surrounded by 160 acres of farmland that Poe also owned.

¶ 5       In February 2020, plaintiffs filed their original eight-count complaint against defendants Clark and Poe, raising claims of negligence. In counts I and II, they alleged Clark was negligent in causing grass clippings to be deposited onto Guest Road when he mowed, littering onto Guest Road, failing to warn of the dangerous condition of the grass clippings, and failing "to remedy or fix the grass clippings." Plaintiffs further alleged the grass clippings caused Michael's motorcycle to slide and go into a ditch as he turned from Sherman Road onto Guest Road, resulting in Michael sustaining "severe and lasting bodily injuries" and other damages. Plaintiffs alleged Poe was both (1) vicariously liable for Clark's negligent acts or omissions based on Clark's status as Poe's employee, agent, or servant (counts III and IV) and (2) directly liable due to his ownership of the Sherman Road property (counts V and VI) and his failure to properly supervise Clark's mowing (counts VII through VIII).

¶ 6       In February 2021, plaintiffs filed a 12-count first amended complaint, adding Poe Enterprises as a defendant and raising four counts (counts IX through XII) against it that alleged negligence. In particular, plaintiffs alleged that Poe Enterprises was vicariously liable for Clark's negligent conduct as its employee, agent, or servant and that it was directly liable based on its failure to supervise Clark as he mowed. Plaintiffs' claims against Clark (counts I and II) and Poe

(counts III through VIII) remained substantially the same as those set forth in its original complaint.

¶ 7     In July 2023, the Poe defendants filed a third motion for summary judgment, which is the subject of this appeal. They asserted they were entitled to judgment as a matter of law as to each count against them in plaintiffs' first amended complaint. Specifically, the Poe defendants argued (1) they did not have a duty to supervise Clark as he mowed his own leased lawn, requiring the dismissal of counts VII, VIII, XI, and XII, (2) Clark was not acting within the scope of any agency relationship with them at the time of the accident, requiring the dismissal of counts III, IV, IX, and X, and (3) Poe did not retain control of the Sherman Road property and did not owe a duty to Michael based on Clark's activities, requiring the dismissal of counts V and VI. To their motion, plaintiffs attached exhibits that contained Poe's and Clark's depositions, a lease agreement for the Sherman Road property, photographs of the site of the accident, and the deposition of Mark Ezra, a mechanical engineer and accident reconstructionist.

¶ 8     The same month, plaintiffs filed their own motion for summary judgment as to their vicarious liability counts against the Poe defendants (counts III, IV, IX, and X). They asserted evidence showed Clark was acting as the Poe defendants' agent or employee at the time of the accident and while mowing the grass at the Sherman Road property and that he was acting within the scope of his agency or employment as a farmhand when he mowed. In August 2023, plaintiffs also filed a response to the Poe defendants' third motion for summary judgment, challenging defendants' claims that they were entitled to a judgment as a matter of law on each count against them. Attachments to plaintiffs' filings included the lease agreement for the Sherman Road property and the depositions of Poe, Clark, and Robert Manley, a second Poe Enterprises employee.

¶ 9        The parties' evidence showed Poe owned farmland that he rented to Poe Enterprises. Since approximately October 2015, Clark worked for Poe Enterprises as a farmhand and was a salaried employee. Clark testified that as part of "the deal of [his] employment," he also rented a residence from Poe located at 4872 Sherman Road. The property included a large shed and grain bin used by Poe and a smaller shed that Clark described as his "personal shed." It was also surrounded by 160 acres of farmland that Poe also owned.

¶ 10       Clark's rental of the Sherman Road property was governed by a lease agreement he entered into with Poe and Poe's wife, Carol. The agreement, dated October 1, 2015, identified the property covered by the lease as "real property and improvements located at 4872 Sherman [Road]." It required the premises to "be used and occupied solely by [Clark and his immediate family] exclusively, as a private single family dwelling." According to the terms of the lease, Clark was required to pay rent of $1 per month, and the lease would terminate upon the "termination of [his] employment." The lease also contained a provision entitled "Maintenance, Repair, and Rules," which stated, "Tenant will, at its sole expense, keep and maintain the Premises and appurtenances in good and sanitary condition and repair during the term of" the lease agreement.

¶ 11       During his deposition, Clark initially testified that the lease covered "[t]he residence at 4872" but not anything else. However, he later clarified that he considered "[t]he grass, the house, and the little shed" to all be encompassed within the property he leased. Clark agreed that his lease for the Sherman Road residence would terminate when his employment terminated and that it was "part of [his] compensation." Clark also testified that he did not lease any farmland connected to the Sherman Road property. According to Poe, the leased portion of the Sherman Road property consisted of the residence and the yard. He agreed the lease with Clark was part of Clark's employment compensation and tied to Clark's employment.

¶ 12      Poe testified that, as a farmhand, Clark had no set schedule but usually worked from 9 a.m. to 5 p.m. Clark described his work schedule as being "different throughout the year." He also testified that as a farmhand, his job duties involved working with farm equipment and farm animals. Regarding whether he mowed lawns at the Poe defendants' various properties, Clark testified as follows:

"A. I don't, no. I use the tractor and the bigger mower. But just roadside ditches and that kind of thing.

Q. You do roadside ditches at these different properties?

A. We haven't recently, no. But yes, I have.

Q. In the past, in your four to five years of employment with *** Poe, have you mowed roadside ditches at these different properties?

A. Yes."

When mowing roadside ditches, Clark used "a tractor and brush hog."

¶ 13      On the day of the motorcycle accident, Clark was mowing the lawn of the Sherman Road property with a "Dixie Chopper" lawnmower that Poe owned. Clark had witnessed Poe using the lawnmower to mow at his properties. Clark testified he used the Dixie Chopper lawnmower "solely for [his] own yard at [his] residence," and he stated he only mowed "after hours on [his] own time." He denied using the lawnmower at any different properties while employed by Poe as a farmhand. Also, he maintained that he did not mow his yard "if [he] was at work," and that he mowed the grass at the Sherman Road property because it was his "preference not to have tall grass."

¶ 14      The lawnmower at issue was stored in a shed at Poe's son's house, and Clark transported the mower to the Sherman Road property using a vehicle and trailer that Poe also

- 5 -

owned. Maintenance on the lawnmower was done by Poe's employees at Poe's large shed on the Sherman Road property. When asked if such maintenance was performed during work hours, Clark responded as follows: "It just depends. If we get to it during the work hours, we do. If we stay late or I do [it] on my own time or whatever." Clark testified he used his own string trimmer at the Sherman Road property.

¶ 15 Clark further stated that Poe never directed him regarding when or how to mow the lawn at the Sherman Road property. To his knowledge, Poe did not know that he was mowing on the day of the accident. However, Clark believed that Poe could make him get off the lawnmower if he was using it at a time that Poe stated he needed it. If Poe told him the Sherman Road residence needed to be mowed once a week, Clark would follow the instruction "[i]f it needed mowed." Clark also testified that because he lived at the Sherman Road residence and took care of the yard, he mowed the grass to a height that he liked. If Poe asked him to mow the grass to a certain height, Clark stated he would not directly tell Poe, " 'No, I'm going to mow to the height I like.' "

¶ 16 Clark recalled that in September 2019, he worked for Poe "Monday through Friday." He did not remember what time he finished work on the date of the accident. However, at some point, after he was "off the clock" and no longer working, he began mowing the lawn at his residence. He started with the east side of the house before moving to the west side toward Guest Road. Clark testified that as he mowed along Guest Road, it was dusk and the "chute" on the lawnmower was closed but pointed toward the road. He stated that when the motorcycle accident occurred "it was dark" and he was "halfway through the west side" of the lawn. Clark did not see the accident but did hear "crashing." He immediately called 911 and attempted to assist Michael, who was lying in a ditch.

¶ 17 Once the scene was clear after the accident, Clark spoke with the police and

observed grass on Guest Road in the northbound lane of travel. As a result of the accident, Clark received a citation "for grass clippings on the road." The same night, Clark called Poe and told him about the accident "[b]ecause it happened in front of [Poe's] house." Clark denied that anyone was supervising him while he mowed at the Sherman Road property on September 23, 2019.

¶ 18       Poe testified that although he owned the Sherman Road property, he did not tell Clark when or how to mow the lawn on the property. He agreed that, for appearance reasons, he did not want the grass at the property to be tall.

¶ 19       Robert Manley testified that beginning in 1978, he worked for Poe Enterprises as a farm laborer. His job duties included driving a tractor or truck and "general repair." He testified he had no set work schedule and the times that he worked depended on the type of work that he had to do. Manley denied ever using the Dixie Chopper lawnmower to cut grass but stated he had repaired it while working for Poe Enterprises. Additionally, although he mowed fields as part of his job for Poe Enterprises, he used a tractor with a piece of equipment attached to it and not the Dixie Chopper lawnmower. Manley stated he had seen Clark using the Dixie Chopper lawnmower at Clark's residence "after hours" when they had "already left work for the day."

¶ 20       Manley also testified that he had resided at the Sherman Road property in the past. He lived there for 8 to 10 years pursuant to a lease. He stated his lease was separate from his employment, and he recalled that he paid rent of $500 per month. Manley further asserted that he never used a lawnmower owned by Poe while living at that residence.

¶ 21       In August 2023, the trial court conducted a hearing at which it heard arguments on both the Poe defendants' third motion for summary judgment as to all counts against them and plaintiffs' motion for summary judgment in their favor on the vicarious liability counts. In September 2023, the court entered a written order denying plaintiffs' motion, granting the Poe

defendants' motion, and entering judgment as to counts III through XII of plaintiffs' first amended complaint in the Poe defendants' favor. The court found no genuine issue of material fact existed with respect to those counts and that the Poe defendants were entitled to judgment as a matter of law.

¶ 22      First, as to counts III, IV, IX, and X, alleging the Poe defendants were vicariously liable for Clark's actions, the trial court found the undisputed facts did not support a finding of an agency relationship between Clark and the Poe defendants outside of Clark's employment as a farmhand and concluded there was "no evidence of any agency relationship related to the mowing of the grass at Clark's personal residence." Second, as to counts V and VI, alleging direct liability by Poe based upon his ownership of the Sherman Road property, the court found "no evidence to support a finding that Defendant Poe retained control of the leased yard or of his tenant's mowing activities." It concluded that as a matter of law, Poe, a landlord, did not owe plaintiffs a duty of care under the facts presented. Third, regarding counts VII, VIII, XI, and XII, alleging the Poe defendants were directly negligent for failing to supervise Clark, the court stated the undisputed facts showed "Clark was mowing his own leased yard after work." It stated that although he was employed by the Poe defendants, there was no evidence to support a finding that Clark mowing his own residential yard was a part of his employment responsibilities "or that any other duty to supervise existed."

¶ 23      Plaintiffs filed a motion to reconsider the trial court's rulings. Following a hearing in November 2023, the court entered a written order denying the motion. In its order, the court also made a finding that there was no just reason for delaying the enforcement or appeal, or both, of its order.

¶ 24      This appeal followed.

¶ 25                                    II. ANALYSIS

¶ 26          On appeal, plaintiffs argue the trial court erred in granting summary judgment in the Poe defendants' favor as to counts III through XII of their first amended complaint. They contend genuine issues of material fact exist as to whether the Poe defendants were vicariously liable for Clark's actions because evidence in the record supported findings that (1) the Poe defendants formed an agency relationship with Clark to act as property manager of the Sherman Road property and (2) Clark was acting within the scope of his employment as a farmhand when mowing that property. Plaintiffs also contend that genuine issues of material fact exist with respect to whether the Poe defendants were directly liable based upon a duty to supervise Clark's mowing activities and Poe retaining control over the Sherman Road property.

¶ 27          Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). "Summary judgment is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt." *Beaman v. Freesmeyer*, 2021 IL 125617, ¶ 72, 183 N.E.3d 767.

¶ 28          "The purpose of summary judgment is not to try a question of fact but, rather, to determine whether a genuine issue of material fact exists." *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 14, 178 N.E.3d 1046. When making such a determination, "a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Id.* ¶ 15. "A genuine issue of material fact precluding summary judgment exists where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id.*

- 9 -

¶ 29 "[T]o survive a motion for summary judgment, a plaintiff need not prove her case, but she must present a factual basis that would arguably entitle her to a judgment." *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12, 21 N.E.3d 684. "If the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is appropriate." *Lewis*, 2020 IL 124107, ¶ 15. On appeal, the trial court's summary judgment rulings are subject to *de novo* review. *Id.*

¶ 30 Additionally, here, plaintiffs filed a cross-motion for summary judgment with respect to their vicarious liability counts (counts III, IV, IX, and X). "When parties file cross-motions for summary judgment, they mutually agree that there are no genuine issues of material fact and that only a question of law is involved." *Jones v. Municipal Employees' Annuity & Benefit Fund*, 2016 IL 119618, ¶ 26, 50 N.E.3d 596. However, "[t]he mere filing of cross-motions for summary judgment and the invitation to the trial court to decide the issue on the record does not establish there is no issue of a material fact." *Giannetti v. Angiuli*, 263 Ill. App. 3d 305, 306, 635 N.E.2d 1083, 1085 (1994). Under such circumstances, a *de novo* standard of review continues to apply. *Id.*

¶ 31 A. Vicarious Liability—Counts III, IV, IX, and X

¶ 32 In counts III, IV, IX, and X of their first amended complaint, plaintiffs alleged the Poe defendants were vicariously liable for Clark's actions under the doctrine of *respondeat superior*. On appeal, they argue that genuine issues of material fact exist as to those counts because the record contains evidence showing that (1) as a part of Clark's employment, the Poe defendants formed an agency relationship with Clark to act as "property manager" of the Sherman Road property and (2) Clark was acting within the scope of his employment as a farmhand when he mowed the Sherman Road property at the time of the accident.

¶ 33 "Generally, a person injured by the tortious action of another must seek his or her remedy from the person who caused the injury." *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 42, 983 N.E.2d 414. "The principal-agent relationship is an exception to this general rule." *Id.* "Under the doctrine of *respondeat superior*, an agent's wrongful conduct may be imputed to the principal." *Sperl v. Henry*, 2018 IL 123132, ¶ 27, 124 N.E.3d 936.

> "Proof of actual agency, or *respondeat superior*, requires a showing that (1) a principal/agent, master/servant, or employer/employee relationship existed; (2) the principal controlled or had the right to control the conduct of the alleged employee or agent; and (3) the alleged conduct of the agent or employee fell within the scope of the agency or employment." *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 18, 981 N.E.2d 971.

¶ 34 "The test for determining whether an agency relationship exists is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Bowyer v. Adono*, 2020 IL App (3d) 180685, ¶ 37, 156 N.E.3d 594. "The ability or right to control the work is a key element in the determination, regardless of whether the principal actually exercises the right to control." *Id.*

¶ 35 Additionally, "Illinois courts look to the Second Restatement of Agency (the Restatement) for guidance in determining whether an employee's acts are within the scope of employment." *Adames v. Sheahan*, 233 Ill. 2d 276, 298-99, 909 N.E.2d 742, 755 (2009). The Restatement "identifies three general criteria" for consideration. *Id.* at 299. Specifically, the Restatement provides as follows:

> "(1) Conduct of a servant is within the scope of employment if, but only if:

- 11 -

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master ***[.]

***

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." Restatement (Second) of Agency § 228 (1958).

¶ 36 All three criteria from section 228 of the Restatement "must be met in order to conclude that an employee was acting within the scope of employment." *Adames*, 233 Ill. 2d at 299. "Whether an employee was acting within the course of the employment depends on the employment contract and the nature of the relationship, which must exist at the time of and in respect to the particular facts out of which the injury arose." *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 165, 862 N.E.2d 985, 992 (2007).

¶ 37 "The party seeking to impose liability on the principal has the burden of proving the existence and scope of the alleged agency relationship." *Bowyer*, 2020 IL App (3d) 180685, ¶ 39, 156 N.E.3d 594.

"Although the resolution of those two issues (existence and scope) is usually a question of fact for the trier of fact to decide, it may be decided by the trial court as a question of law when the material facts relating to the relationship are undisputed and only one reasonable conclusion may be drawn from the undisputed facts or

where no liability exists as a matter of law." *Id.*

¶ 38     Here, as to counts III, IV, IX, and X of plaintiffs' first amended complaint, the trial court found the facts were undisputed and did "not support a finding of any agency relationship between Clark and the Poe Defendants outside [of] Clark's employment as a farmhand." It also found "no evidence of any agency relationship related to the mowing of the grass at Clark's personal residence." We agree and find no genuine issues of material fact exist regarding plaintiffs' vicarious liability counts and that the Poe defendants were entitled to summary judgment in their favor as a matter of law.

¶ 39                     1. *Existence of an Agency Relationship for*

                     *Clark's Upkeep of the Sherman Road Property*

¶ 40     As noted, plaintiffs first argue the Poe defendants were vicariously liable for Clark's mowing activities at the Sherman Road property by virtue of an agency relationship through which Clark, in addition to his role as farmhand, "effectively act[ed] as the property manager" of the Sherman Road property on defendants' behalf. They assert that evidence in the record, including deposition testimony and the lease agreement, established that "living at and upkeeping [the Sherman Road property] was a part of *** Clark's employment." Plaintiffs maintain that, as a result, the Poe defendants had a right to control the manner in which Clark performed his mowing activities, even if they did not exercise such control.

¶ 41     Here, the only reasonable conclusion from the undisputed facts is that Clark was not acting as the Poe defendants' employee or agent when he was mowing at the Sherman Road property just prior to the motorcycle accident. Evidence presented in connection with the parties' summary judgment motions showed Clark was employed by Poe Enterprises as a farmhand. Additionally, he entered into a lease agreement for the Sherman Road property with Poe and his

wife. That agreement allowed Clark to use the Sherman Road property as his personal residence for a nominal amount of rent, $1 per month. Both Clark and Poe testified that the cheap rent in the lease agreement was part of Clark's employment compensation. As argued by the Poe defendants, the evidence supports the finding that the lease agreement was a *benefit* of Clark's employment, not a requirement or condition of it.

¶ 42　　　　Also, no evidence showed that the Poe defendants had or retained control over Clark's mowing activities on the leased property. We note "[t]he status of landlord and tenant of itself does not create an agency relationship." *People of Kane County v. Midway Landfill, Inc.*, 23 Ill. App. 3d 1080, 1083, 321 N.E.2d 91, 94 (1974). Further, "the *** distinguishing characteristic of a lease is the surrender of possession and control of the property to the tenant for the agreed upon term." *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 310, 948 N.E.2d 1, 19 (2010); see *Nida v. Spurgeon*, 2013 IL App (4th) 130136, ¶ 29, 998 N.E.2d 938 ("[T]he lease transfers the lessor's control over the property to the lessee."). "The landlord's liability for the leased premises is extinguished because the lessee acquires an estate in the land and temporarily becomes both owner and occupier, subject to all of the responsibilities of one in possession to those who enter upon the land and those outside of its boundaries." *Klitzka ex rel. Teutonico v. Hellios*, 348 Ill. App. 3d 594, 597, 810 N.E.2d 252, 256 (2004).

¶ 43　　　　Here, the lease agreement created a landlord and tenant relationship between Poe and Clark. It also transferred control over the Sherman Road property to Clark for use as his personal residence. Notably, the lease contained a specific provision that stated Clark was required to "keep and maintain" the property "in good and sanitary condition and repair." Nothing in the lease agreement or the other evidence presented indicates Poe retained any control over the yard of the Sherman Road property or the way in which Clark maintained that yard. Plaintiffs raise no

challenge to the validity of the lease agreement, and we find it shows that Clark, not the Poe defendants, had control over the Sherman Road property and its upkeep.

¶ 44    Plaintiffs cite authority for the proposition that "[a] written contract is not conclusive of the nature of the relationship between the parties." *Bruntjen v. Bethalto Pizza, LLC*, 2014 IL App (5th) 120245, ¶ 80, 18 N.E.3d 215. In particular, "the declaration of the parties is not controlling where the conduct of the parties demonstrates the existence of an agency relationship." *Oliveira-Brooks v. Re/Max International*, *Inc.*, 372 Ill. App. 3d 127, 134, 865 N.E.2d 252, 258 (2007). Here, the parties' conduct did not show the existence of an agency relationship with respect to Clark's mowing activities. Rather, Clark testified that because he lived at the Sherman Road property and took care of the yard, he mowed the grass to a height he liked. Clark mowed the grass "on [his] own time" and because it was his "preference not to have tall grass." He stated that Poe did not direct him regarding when or how to mow. Nor is there any evidence in the record that Poe directed Clark with respect to any aspect of the property's upkeep. Poe similarly testified that he did not tell Clark when or how to mow the grass at the Sherman Road property. Under the facts presented, the parties' conduct regarding Clark's mowing activities also fails to support the existence of an agency relationship.

¶ 45    Plaintiffs further argue that the existence of an agency relationship was shown through evidence that the property Clark mowed was not part of the lease agreement. They point to testimony from Clark that the lease agreement covered "[t]he residence at 4872" and not anything else. However, although Clark initially provided such testimony, he later clarified during his deposition that the lease agreement covered "[t]he grass, the house, and the little shed." Poe similarly testified that the leased portion of the Sherman Road property consisted of the residence and the yard. Further, the lease agreement establishes that he leased property consisting of the "real

- 15 -

property and improvements located at 4872 Sherman [Road]." As the Poe defendants note on appeal, "real property" means "[l]and and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land." (Internal quotation marks omitted.) (citing Black's Law Dictionary (12th ed. 2024)). Accordingly, not only was it Poe's and Clark's belief that the leased property included the yard and the residence at the Sherman Road property, but the lease agreement also supports their understanding.

¶ 46    Finally, plaintiffs also argue that factors used to determine whether a person is acting as an agent or an independent contractor are relevant to the present case and that they weigh in favor of finding that an agency relationship existed between Clark and the Poe defendants. Such factors include "the right to control the manner in which the work is performed; the right to discharge; the method of payment; whether taxes are deducted from the payment; the level of skill required to perform the work; and the furnishing of the necessary tools, materials, or equipment." *Lang v. Silva*, 306 Ill. App. 3d 960, 972, 715 N.E.2d 708, 716 (1999). We note an independent contractor is "[s]omeone who is entrusted to undertake a specific project but who is left free to do the assigned work and to choose the method for accomplishing it." Black's Law Dictionary (12th ed. 2024). Here, the question is not whether Clark was an agent versus an independent contractor, but whether he was an agent versus someone acting in furtherance of his own interests by mowing the grass at his personal residence.

¶ 47    Nevertheless, even assuming that these additional factors apply, we would find they do not establish the existence of an agency relationship. Of the above factors, no single factor is determinative. *Lang*, 306 Ill. App. 3d at 972. However, "the right to control the manner in which the work is performed is considered to be the predominant factor." *Id.* Here, the evidence supported a finding that Clark, as the lessee of the Sherman Road property, was in control of the mowing

activities at the property. Clark was not hired to mow or maintain the Sherman Road property and was not paid for such work. Rather, his ability to lease the property as his own personal residence, at a low rental rate, was part of his compensation as a farmhand. Additionally, while the lawnmower Clark used to mow the property belonged to Poe, Clark testified he also used his own string trimmer when mowing at the property.

¶ 48 In this case, the evidence showed the Poe defendants could not and, in fact, did not control Clark's mowing activities at the Sherman Road property. As the trial court determined, the undisputed facts did not support a finding of an agency relationship between Clark and the Poe defendants outside of Clark's employment as a farmhand.

¶ 49 2. *The Scope of Clark's Employment as a Farmhand*

¶ 50 Plaintiffs alternatively argue that even if Clark's employment did not include a duty "to effectively act as the property manager" for the Poe defendants at the Sherman Road property, the evidence in the record supports a finding that his mowing activities were within the scope of his employment as a farmhand. They contend the record supports a finding that Clark's mowing activities were the kind he was employed to perform, occurred within the authorized time and space limits of his employment, and were motivated by a purpose to serve the Poe defendants. Again, we disagree.

¶ 51 At the time the accident occurred, Clark was mowing the yard of his personal, leased residence, and the evidence established such activity was not the kind Clark was employed to perform. Specifically, he testified that as a farmhand, his duties involved working with farm equipment and animals. Although he had mowed "roadside ditches" in the past with "a tractor and brush hog," he was not required to mow the lawns of the Poe defendants' properties.

¶ 52 Additionally, the evidence established Clark was not mowing within the authorized

time and space limits of his employment. Although Clark's work hours varied, he testified that when mowing at the Sherman Road property, he only did so "after hours on [his] own time." He explicitly stated he did not mow his yard "if [he] was at work." On the day of the accident, Clark did not begin mowing at his residence until he was "off the clock" and no longer working. When Manley observed Clark mowing at the Sherman Road property, it was only "after hours," when they had "already left work for the day."

¶ 53      Finally, the evidence also showed Clark was motivated by his own interests rather than those of the Poe defendants. Specifically, as the lessee of the Sherman Road property, Clark was responsible for maintaining the property, and he testified he mowed because it was his "preference not to have tall grass."

¶ 54      Here, Clark's mowing activities at the Sherman Road property were not within the scope of his employment as a farmhand. Accordingly, the trial court was correct in finding the record contained "no evidence of any agency relationship related to the mowing of the grass at Clark's personal residence." We find the court properly granted summary judgment in favor of the Poe defendants with respect to the vicarious liability counts of plaintiffs' first amended complaint and that it committed no error by denying plaintiffs' motion to reconsider that ruling.

¶ 55            B. Negligent Supervision—Counts VII, VIII, XI, and XII

¶ 56      In counts VII, VIII, XI, and XII of plaintiffs' first amended complaint, they raised direct negligence claims against the Poe defendants for negligent supervision. On appeal, they contend the trial court erred in ruling as a matter of law that the Poe defendants did not have a duty to supervise Clark at the time of the accident. They contend the evidence before the court supported a finding that mowing the lawn of the Sherman Road property was both (1) a task Clark was expected to perform as the effective property manager of the Sherman Road property and

- 18 -

(2) incidental to his work as a farmhand.

¶ 57    "[A]t common law an employee's malfeasance may generally create liability for his or her employer in two ways: vicarious liability for the acts of the employee, or direct liability for the employer's own acts." *Vancura v. Katris*, 238 Ill. 2d 352, 375, 939 N.E.2d 328, 343 (2010). "[A] claim of direct negligence *** alleges that the employer was itself negligent." (Emphasis omitted.) *Id.* "As in any claim for negligence, a plaintiff must establish the existence of a duty, a breach of the duty, and an injury to the plaintiff that was proximately caused by the breach." *Id.*

¶ 58    "In a cause of action for negligent supervision against a tortfeasor's employer, a plaintiff must establish that (1) the employer had a duty to supervise its employee, (2) the employer negligently supervised its employee, and (3) such negligence proximately caused the plaintiff's injuries." *Lewis v. OSF Healthcare System*, 2022 IL App (4th) 220016, ¶ 42, 233 N.E.3d 238; see *Doe v. Coe*, 2019 IL 123521, ¶¶ 52, 61, 135 N.E.3d 1. "An employer has a duty to supervise all employees; the extent to which she must do so depends on many factors, such as the work performed, the employees performing it, the size of the business, the type of work, and the employer's clientele, among others." *Coe*, 2019 IL 123521, ¶ 58.

¶ 59    "Whether a duty exists is a question of law to be determined by the court." (Internal quotation marks omitted.) *Id.* ¶ 36. "[T]o impose a duty to supervise, only general foreseeability is required in an employment context." *Id.* ¶ 61.

¶ 60    Here, in granting the Poe defendants' motion for summary judgment as to these direct negligence counts, the trial court reiterated its finding that "[t]he undisputed facts establish[ed] Clark was mowing his own leased yard after work." It stated that although Clark was employed by the Poe defendants, the evidence did not "support a finding that mowing his own residential yard was a part of his employment responsibilities with the Poe defendants or that any

other duty to supervise existed." The court committed no error in reaching these determinations.

¶ 61 Plaintiffs' argument on appeal is that the Poe defendants had a duty to supervise Clark's mowing activities at the Sherman Road property by virtue of Clark's status as an effective "property manager" for the Sherman Road property or because mowing was a part of Clark's tasks as a farmhand. For the reasons already expressed above, the evidence in the record supported neither conclusion. Instead, it showed Clark leased the Sherman Road property from Poe to use as his own personal residence. As lessee, Clark was the party responsible for its care and maintenance and, at the time of the motorcycle accident, Clark was not under the Poe defendants' control. Further, although the Poe defendants employed Clark as a farmhand, his job duties did not include mowing lawns. Instead, Clark's lawn mowing activities occurred after work and on his own personal time.

¶ 62 Plaintiffs' arguments on appeal—that the Poe defendants had a duty to supervise Clark because mowing was a task Clark was required to perform as a property manager or incidental to his job duties as a farmhand—lack merit. Accordingly, they have failed to establish any error by the trial court in finding the Poe defendants had no duty to supervise, granting summary judgment in the Poe defendants' favor as to counts VII, VIII, XI, and XII, or denying plaintiffs' motion to reconsider.

¶ 63 C. Control Over the Sherman Road Property—Counts V and VI

¶ 64 Finally, in counts V and VI of their first amended complaint, plaintiffs alleged Poe was directly negligent based upon his ownership of the Sherman Road property. They argue the trial court erred by ruling as a matter of law that such claims could not be sustained because Poe did not retain control over the property.

¶ 65 As set forth above, "the *** distinguishing characteristic of a lease is the surrender

of possession and control of the property to the tenant for the agreed upon term." *Millennium Park*, 241 Ill. 2d at 310; see *Nida*, 2013 IL App (4th) 130136, ¶ 29 ("[T]he lease transfers the lessor's control over the property to the lessee."). "[A] landlord is not liable for injuries caused by a defective condition on the premises leased to a tenant and under the tenant's control." *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 220-21, 531 N.E.2d 1358, 1366 (1988). However, "if a landlord retains control of a portion of the premises leased to the tenant it has the duty, as the party in control, to use ordinary care in maintaining that part of the premises in a reasonably safe condition." *Id.* at 220.

¶ 66        Plaintiffs argue a triable issue of fact existed regarding whether Poe retained control of the yard at the Sherman Road property. In particular, they assert the lease was silent as to what portion of the Sherman Road property Clark actually rented and that Clark's understanding of the lease was that he rented only the house.

¶ 67        Here, as stated, the lease agreement provided that the leased property consisted of the "real property and improvements located at 4872 Sherman [Road]," suggesting that the yard surrounding the Sherman Road residence was included within the lease. See Black's Law Dictionary (12th ed. 2024) (defining "real property" as "[l]and and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land"). Further, contrary to plaintiffs' assertions on appeal, both Clark's and Poe's testimony showed that they understood the lease to include the yard. Although Clark initially indicated that he thought the lease agreement covered only "[t]he residence at 4872," he later clarified that the lease also covered "[t]he grass, the house, and the little shed." Poe testified similarly, asserting that Clark leased both the residence and the yard of the Sherman Road property.

¶ 68        Moreover, the lease contained a specific provision that stated Clark was required to

"keep and maintain" the leased property "in good and sanitary condition and repair." Although there were a larger shed, a grain bin, and surrounding acres of farmland that were also associated with the Sherman Road property and not covered by the lease, the evidence shows Clark was in control of the residence and the yard of the property.

¶ 69　　　In granting the Poe defendants' motion for summary judgment as to the direct negligence counts against Poe, the trial court found "no evidence to support a finding that Defendant Poe retained control of the leased yard or of his tenant's mowing activities" and, thus, as a matter of law he did not owe a duty of care under the facts presented. Again, we find no error in the court's determination. The court properly granted the Poe defendants' motion for summary judgment and denied plaintiffs' motion for reconsideration of that summary judgment ruling.

¶ 70　　　　　　　　　　　III. CONCLUSION

¶ 71　　　For the reasons stated, we affirm the trial court's judgment.

¶ 72　　　Affirmed.